REUBEN B. GRYZMISH, *et al.,* v. ANNA KRIM a single woman.

170 So. 717

Division B.

Opinion Filed November 18, 1936.

192

*Louis Heiman* and *Loftin, Stokes & Calkins,* for Appellants;

*David B. Newson* and *Lipton, Wilson & Feuer,* for Appellee.

BUFORD, J.—The appeal in this case brings for review final decree in favor of the appellee against the appellants.

Appellants filed suit to foreclose a vendor's lien upon certain property sold on May 15, 1925, by the complainants in the court below to one Leo F. Smith. The sale embraced two lots and separate contracts were entered into between the parties as to each lot. As to Lot 1, Block 2 of Normandy Beach South, according to plat thereof, to be filed for record in the office of the Clerk of the Circuit Court in and for Dade County, the purchaser agreed to pay as the purchase price thereof the sum of $9,000.00, payable $2250.00 cash and a like amount on or before one year from date, and a like amount on or before two years from

date and a like amount on or before three years from date, with interest on deferred payments at the rate of 7% per annum, payable semi-annually. As to lot 2 of Block 2 of Normandy Beach South, according to plat thereof to be filed for record in the office of the Clerk of the Circuit Court in and for Dade County, Florida, the purchase price was $7,000.00, payable $1750.00 cash and a like amount on or before one year from date, a like amount on or before two years after date and a like amount on or before three years after date with interest on deferred payments at 7% per annum, payable semi-annually.

Each of the contracts bore date of May 15th, 1925, but it appears from the record that they were acknowledged on the 9th day of May, 1925. On the 22nd day of July, 1925, On the 22nd day of July, 1925, Leo F. Smith joined by his wife, Blanche M. Smith, transferred and assigned those two contracts and their rights thereunder to Rocielle Realty Corporation under certain conditions therein named. The contracts each contained the following stipulations:

All of said deferred payments payable to first parties herein to bear interest at the rate of 8 per cent. per annum, payable semi-annually from the date hereof and being evidenced by promissory notes from second party to first parties herein; interest under said sales contract to be assumed by second party and paid according to the terms thereof.

"And to pay all taxes, assessments or impositions, that may be legally levied or imposed upon said land subsequent to July 22, 1925.

"And in case of the failure of the said party of the second part to make either of the payments or any part thereof, or to perform any of the covenants on its part hereby made and entered into, whether particularly specified herein, or

in the said installment sales contract which it has hereby assumed, this contract shall at the option of the parties of the first part, be forfeited and terminated; and the party of the second part shall forfeit all payments made by it on this contract; and such payments shall be retained by the said parties of the first part in full satisfaction and liquidation of all damages by them sustained; and the parties of the first part shall have the right to re-enter and take possession of the premises aforesaid without being liable to any action therefor.

"It Is UNDERSTOOD AND AGREED that if second party assigns its rights under this agreement it shall thereupon immediately give written notice by mail to Normandy Beach Properties, 201 E. Flagler St., Miami, Fla., of the name and postoffice address of its assignee.

"It Is MUTUALLY AGREED, by and between the parties hereto, that the time of payment shall be an essential part of this contract."

On the 29th day of April, 1926, Rocielle Realty Corporation executed assignments purporting to be to one H. C. Butler. Each of those assignments shows upon its face to have been made "in consideration of the sum of $10.00 and other valuable considerations to it in hand paid." Those assignments appear to have been recorded on May 22, 1926, in the office of the Clerk of the Circuit Court of Dade County, Florida. There appears in the record assignments of the same two contracts purporting to have been made from H. C. Butler of Palm Beach County to one Anna Krim dated May 24, 1925, and which appear to have been filed for record June 11th, 1928.

At the time suit was filed the purported assignment from Butler to Krim has not been recorded. Same was later recorded and then Krim was made a party defendant. She

was the only party who defended the suit. She filed a counter claim. In her counter claim she avers that the purported assignment from Smith and wife to Rocielle Realty Corporation was in fact a sale of the two lots from the complainants to Rocielle Realty Corporation. She alleges that Rocielle Realty Corporation paid $15,000.00 cash and agreed to make other payments. She alleges that Butler paid Rocielle Realty Corporation $15,000.00 cash and assumed other payments and that she paid Butler $15,000.00 cash and assumed other payments. She prayed for judgment against the complainants and each of the co-defendants and that she be decreed to hold a vendees lien on the property to enforce the payment of the sum of $15,000.00 which she had paid thereon. She alleges certain misrepresentations made to her and made to Rocielle Realty Corporation which misrepresentations Rocielle Realty Corporation relied on and she relied on and believed, and each was thereby persuaded to pay the sum of $15,000.00 as cash payment on the lots involved.

She further alleges that:

"After the complainants had executed the said contracts to sell the said property as aforesaid, upon plats and with representations as aforesaid, one Thomas H. Horobin, as owner of Park View, a development adjoining the said Normandy Beach, South, in which said lots were located, obtained a permit from the United States Engineer of the War Department, for the digging of a canal, from a creek known as 'Indian Creek' on the northern line of the said two lots, in place of the said street known as 'Surf Drive,' and directly adjoining the said Lot 1, and extending in an easterly direction beyond the said lots; that before the said permit could or would be granted the said parties interested in the digging of the said canal obtained from the said com-

plainants as the record owners in fee simple of the said property, waivers of objection and consents to the digging of the said canal; that notwithstanding the said contracts and the obligations of the complainants under the said contracts of sale for the said land, with the rights and privileges purchased therewith, the complainants consented to the digging of the said canal for some consideration, the amounts of which is unknown to this defendant, and through some trade or understanding with the parties interested in the digging of said canal, permitted the said canal to be dug and dredged and failed to make any objection or do anything in opposition thereto and failed in anywise to protect the rights of the said Rocielle Realty Corporation and its assignees, under which parties this defendant holds as assignee as aforesaid. That the direct and proximate effect of the digging of the said canal along said property has completely destroyed the value of said property as hotel and apartment property as aforesaid, has completely eliminated the said street known as 'Surf Drive,' has destroyed the said property as a double corner on said street leading to said Collins Avenue, has ruined the value of the said properties as aforesaid; the water from said canal has almost entirely washed the earth of said Lot No. 1, and ruined the value of the said Lot No. 2, so that the value of said Lots 2 and 1 is now not worth more than $2,000.00."

We have carefully considered the transcript of the record, including the evidence, and find that the defendant counter-claimant totally failed to prove the allegation that Rocielle Realty Corporation purchased the Lots in question from the complainants. Although it is true than one or more of the defendants testified that the negotiations for the purchase of the assignment of contract for deed was carried on with one Ensign, who was a real estate broker and who acted

as agent at all times for the original owners of these lots, and that the lots were referred to as Normandy Beach Properties, the written record shows that Rocielle Realty Corporation purchased, and its agents and officers' knew that it was purchasing, contracts of sale and for deeds embracing these lots from Leo F. Smith and wife, and, in corroboration of this written evidence, Mr. Ensign testified most positively that in the negotiations and transactions with Rocielle Realty Corporation he at no time acted for or in behalf of the complainants but therein at all times acted as a broker for and on behalf of Leo F. Smith and wife and that Rocielle Realty Corporation, its officers and agents were fully advised of that fact. Therefore, we must hold that that fact was so conclusively established that no finding to the contrary may be sustained.

So it follows that if appellee was entitled to recover under her counter claim she could only do so as the remote assignee of Smith and as she took under the assignment of the Smith contract after the record showed default on the part of Smith in complying with the terms of the contract, she took same subject only to such rights as Smith might have enforced against the appellants as to each lot respectively.

There is no evidence in the record as to any representations made by the appellants to Smith as to either of said lots.

As hereinbefore stated, the assignment of the contracts by Leo F. Smith and wife to Rocielle Realty Corporation were dated July 22, 1925, and were acknowledged on the 31st day of July, 1925, and were recorded on the same date.

The record further shows by endorsements on the several notes executed by Smith to the complainants Gryzmish that interest was paid in the sum of $87.75 on each of the three

notes or $2250.00 each on the 23rd day of February, 1926, and that semi-annual interest in the sum of $61.25 was paid on the same date on each of the notes for $1750.00 each and that thereafter no further payments were made.

The record does not show by whom this interest was paid but it does show that it was paid after Rocielle Realty Corporation assumed the payment of the obligations of Smith to appellants.

It appearing that the defendant counter-claimant has failed to show any such misrepresentations made by the complainants to Leo F. Smith or any such breach of the contract made by the complainants with Leo F. Smith as to constitute a valid basis of recovery by Leo F. Smith against the complainants, it follows that the defendant counter-claimant has failed to make a case entitling her to recovery because of misrepresentations or breach of the contract.

This brings us to her second ground of basis of recovery which is set up in counter claim as hereinabove quoted.

The record shows conclusively that the canal complained of was dug and such work as was done in that regard was completed in the month of May preceding the month in which the defendant-counter-claimant purports to have taken an assignment of contract for deed. Therefore, it appears that the act resulting in the damage which she claims in this case because of the construction of the canal was performed prior to her interest, if any, in the property.

There is no evidence in the record that any person representing the complainants, or purporting to represent them, made any representations whatever to the defendant counter-claimant. All the representations which she alleges were made to her in regard to the property were alleged to have been made by one of the stockholders in Rocielle Realty Corporation and its agent. The record also shows that

the property was so located that defendant-counter claimant could have easily inspected it and have thereby learned all about its physical condition before she took assignment of the contract for deed; that the complainants did nothing to prevent or preclude her exercising that right and that caution.

We have many times said that we could take judicial cognizance of the fact that a real estate boom prevailed in this State during the year 1925 and also that that boom bursted early in 1926. It was a matter of common knowledge that prices and values of real estate in Dade County decreased between December, 1925, and June, 1926, about as rapidly as they had risen between December, 1924, and June, 1925; and yet, this record discloses that the defendant counterclaimant on the 24th day of May, 1926, purported to have entered into a contract to purchase two vacant lots which she had never seen, and knew nothing about, for the sum of $30,000.00, of which she claims to have paid .$15,000.00 cash, without taking the trouble and ordinary caution of looking at the lots to determine anything about their character, location or condition. Under this state of facts she could not recover because of misrepresentations made to her, even if they had been made by someone authorized to speak for appellant. See Stokes v. Victory Land Co., 99 Fla. 795, 128 Sou. 409; Glass, et al., v. Craig, et al., 83 Fla. 408, 91 Sou. 332; Harris v. Zeuch, 103 Fla. 183, 137 Sou. 135; Marshall, et ux., v. Hartman, 104 Fla. 143, 139 Sou. 441; Geo. E. Sebring Co. v. Skinner, 100 Fla. 315, 129 Sou. 759; Pepple v. Rogers, et al., 104 Fla. 462, 147 Sou. 205.

In this connection we also observe from the record that the defendant counterclaimant now claims that she learned of the true condition of the property in June, 1926. This

was just a few days after she had taken an assignment of the contract for deed. Yet, she took no legal action against anyone to recover the money which she alleged that she paid ·to Butler's agents until she filed her counterclaim in this suit, which was two years later. It, therefore, appears that .she was guilty of gross laches. That laches will bar ·recovery in a suit to rescind contract is well settled in this jurisdiction. See Marshall v. Hartman, *supra;* Glass v. Craig, *supra;* and the old case of Stephens v. Orman, 10 Fla. 9; Mizell v. Watson, 57 Fla. .111, 49 Sou. 149; Lake Mable Development Corporation v. Bird, 99 Fla. 253, 126 Sou. 356; Columbus Hotel Corp. v. Hotel Management Co., 116 Fla. 464, 156 Sou. 893,· and cases there cited.

As hereinbefore stated, the contracts were separate contracts for the purchase and sale of each lot.

The record shows conclusively that the appellants received as payment on lot 1 only the sum of $2500.00 cash and the sum of $236.25 interest, making a total of $2736.25; and on lot 2 the sum of $1750.00 cash and interest in the sum of $183.75, making a total of $1,933.75, and a grand total of $4670.00.

·So, even if the defendant counterclaimant could have recovered at all from these appellants she could have recovered no more than the total amount of payments to the appellants. See Ware v. Busch, 108 Fla. 153, 146 Sou. 197.

The defendant counterclaimant also based her right of recovery on the claim that the lots had been damaged after the same were purchased by her as the result of the digging of a canal on adjoining property, as hereinbefore set forth. It is not contended that the appellants, the original vendors, dug the canal or procured its digging. The most that is claimed is that it was dug with the knowledge and consent

of appellants. The alleged knowledge and consent was dated August 22, 1936, and is in the following language:

"A DeWinkler, Vice President and Chief Engineer,
    "District Engineer, Jacksonville, Florida.
"Dear Sir:

"This is to advise that we are the owners of the property on the south and west sides of the property owned by Thomas H. Horobin and that we have no objections to the construction·of a bulkhead and the necessary dredging and filling as indicated on the attached maps made by W. E. Brown, Civil Engineer, and dated August 8, 1925.

"Yours very truly,
                "R. B. GRYZMISH,
                "REUBEN B. GRYZMISH, *Trustee.*

It will be noticed that this consent is "that we have no objection to the construction of a bulkhead and the necessary dredging and filling as indicated on attached maps by W. E. Brown, Civil Engineer, dated August 8, 1925."

Nowhere in the record is it shown that the bulkhead was constructed and that the necessary dredging and filling was done as indicated on the maps referred to. Nor is it shown that the complainants were in any way responsible for it· not being so constructed; nor is it shown that if that work had been so done the property would have been damaged.

We are entirely mindful of the rule often repeated in decisions of this Court that the finding of the Chancellor based upon conflicting evidence will not be disturbed by an appellate court unless shown to be clearly erroneous; but, it is also well settled that where decree is manifest against the weight of evidence or contrary to and unsupported by the legal effect of the evidence, it then becomes the duty of

the appellate court to reverse such decree. See Farrington v. Harrison, 95 Fla. 769, 116 Sou. 497, and cases there cited.

Long after the final decree in this case, petition was filed for a rehearing based upon newly discovered evidence, and the Chancellor re-referred the case to a Master to take testimony upon the question as to whether or not Butler had ever been an assignee for value of Rocielle Realty Corporation and whether or not Butler had ever made an assignment of the contract for deed to Anna Krim. The appellants present to us the record of the testimony taken and the appellee presents to us testimony and an affidavit made by Butler. It appears that the court below has not acted on the motion for a rehearing but, considered as such, the court could not have granted a rehearing as the final decree had passed by lapse of time beyond the control of the Chancellor, unless the same was void because of fraud. The decree could not be reversed because of the appearance of this part of the record, but we cannot overlook the fact that this brings to our attention matters which strongly indicate that a gross fraud was perpetrated on the court and that in all probability upon a re-examination of the facts and further examination of witnesses, the Chancellor will find that Anna Krim never received any valid or binding assignment of the contract of sale and that Butler has never paid or received anything of value for any alleged assignment of the contract for deed and, in fact, has never made any assignment thereof.

For the reasons stated, the decree should be reversed with directions that the case be returned to the rolls for such further proceedings as may be in accordance with equity and good conscience, that a decree may be finally entered not inconsistent with the views as herein expressed.

It is so ordered.

Reversed and remanded.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.