SUZANNE P. HARBESON, *et vir, et al.*, v. JAMES H. MERING, *et al.*; SUZANNE P. HARBESON, Etc., v. JAMES H. MERING, *et al.*

(2 Cases)

2 So. (2nd) 886

Division A

Opinion Filed January 14, 1941
On Rehearing, En Banc, June 6, 1941
Further Rehearing Denied June 26, 1941

*Leland Hyzer,* for Appellants;

*Walsh & Ellis,* for Appellee.

PER CURIAM.—In this appeal two cases were consolidated.

In the first case Suzanne P. Harbeson and her husband filed suit against James H. Mering and Dale Johnston seeking to cancel a certain promissory note and mortgage securing the same which was the third note of a series, the payment of which had been assumed by Suzanne P. Harbeson as evidenced by a deed conveying certain property to her subsequent to the execution of the notes and mortgage by a third party, the grantor in the deed, and subsequent to the record of the mortgage.

The second suit was filed by Johnston to foreclose the mortgage and afterwards Johnston assigned the note and mortgage to Mering and he was substituted as complainant in that suit.

The complainant in the first suit sought to cancel the note and mortgage upon the ground that Mering, the original mortgagee and who was the assignee of the note and mortgage *pendente lite,* had made an agreement to cancel the third and last note upon the condition that complainants would pay the second note, they having already paid the first note, and the Harbeson's defense to the mortgage foreclosure was upon the same theory.

The chancellor found in effect that if any agreement was made by Mering to cancel the note and mortgage it was made without consideration and was not bind-

ing. The language of the findings of the chancellor is:

"After reading the files in the case and duly considering the same, I am of the opinion that there was no sufficient agreement based upon a valid consideration warranting the cancellation of the third note involved and secured by the mortgage described in this note (1 Amer. Juris. 217, *et seq.*) and that the plaintiff is entitled to a foreclosure decree to collect said note less the $700.00 payment made thereon, together with all other charges provided for by the mortgage and note."

This finding of fact is amply supported by the testimony and when the chancellor found this fact to exist it was not necessary to consider other questions which could not effect the conclusion of the decree in favor of Mering.

It follows that the decree should be, and is, affirmed.

So ordered.

TERRELL, C. J., BUFORD, THOMAS and ADAMS, J. J., concur. WHITFIELD, BROWN and CHAPMAN not participating.

## ON REHEARING

CHAPMAN, J.—The cases here are before the Court on rehearing granted under date of March 11, 1941. The record discloses that Suzanne P. Harbeson on November 12, 1936, filed her bill of complaint in the Circuit Court of Dade County, Florida, against James H. Mering praying for the cancellation of a note identified in the record as note number "three." It was alleged that she had paid the consideration and obtained an agreement on the part of Mering to cancel the said note but refused or declined so to do.

On December 22, 1936, Dale Johnston filed a bill of

complaint seeking to foreclose a mortgage and for the collection of the note identified in the record as note number "three." James H. Mering was substituted as a party plaintiff in lieu of Dale Johnston and the two cases, by an appropriate order entered by the late H. F. Atkinson, Circuit Judge, were consolidated and disposed of in a single final decree.

These suits grew out of the factual controversy viz: On June 30, 1925, one A. W. Witter executed and delivered to James H. Mering a mortgage covering certain described property located in Dade County, Florida, and the mortgage was security for three promissory notes, two of which were in the sum of $3,,555.67 each, while the third note was for the sum of $3,555.66. The notes were transferred on or about February 2, 1926, by James H. Mering to Pennsylvania Trust Company, of Pittsburg, Pennsylvania, as collateral to secure an indebtedness of $10,000.00 due and owing by said Mering to the Pennsylvania Trust Company.

On November 20, 1936, James H. Mering and Pennsylvania Trust Company assigned and transferred the notes and mortgage to Dale Johnston. During the month of April, 1938, Dale Johnston assigned the mortgage and notes to James Mering.

On the 30th day of June, 1925, A. W. Witter by warranty deed conveyed to Suzanne P. Harbeson the mortgaged premises for an agreed purchase price of $22,000.00 and she paid in cash at the time of taking the deed the sum of $11,333.00 and assumed the payment of the mortgage indebtedness evidenced by the said three promissory notes in the total sum of $10,667.00. The notes matured one, two and three

years, respectively, after the date of the mortgage (being June 30, 1925), with interest at the rate of 8% per annum.

Suzanne P. Harbeson was a married woman and in her bill of complaint alleged that the mortgage and notes were given at the height of what was known as the "Florida Real Estate Boom" and that the agreed purchase price of $22,000.00 was not only an inflated, imaginary and exorbitant value but the intrinsic value of said real property was less than the sum of $11,333.00 in cash by her paid when accepting the warranty deed thereto.

On June 28, 1926, Suzanne P. Harbeson paid to the Pennsylvania Trust Company, of Pittsburg, the sum of $3,840.12, being the first of said promissory notes described in the mortgage, the payment of which was assumed by her, and making a total cash payment on account of the purchase price of said lots in the sum of $15,173.12, but alleged that at the time of said payment on June 28, 1926, the said lots had but little, if any, value.

On June 30, 1927, the second of said series of promissory notes in the sum of $3,555.67 matured and payment thereof was demanded but was refused, and on September 1, 1927, James H. Mering wrote plaintiff's husband and agent viz:

"However we are both in trouble. I am afraid from a letter I received from the Treasurer of the trust Company yesterday that the bank will not wait much longer on the payment of the past due note, and when I can't lift it will foreclose. I'd hate to see that done. If you could possibly pay that note off, I can continue to pay the interest on the other note and by the time it comes due, I am certain I can lift it without loss to

you and I will certainly be glad to relieve you of it, as you have already taken a big gambler's chance on making money out of this property. *I can give you my word that this note will be the last you will have to pay,* so that you will be getting the lots cheaper than you can buy others, with no interest to pay and it will give you a chance to wait until this property comes back, for I will have gotten out of my difficulties in the meantime, but with suits pending, and some other payments due of my own, I am still helpless.

"This is the only way I can see out now without having to let the bank foreclose, and I certainly hate to see that done with all the money you have invested there. With the payment of the note now due and no interest at any time for I am and have been meeting the interest since your last payment, you have only to wait developments and you have the lots practically clear.

"Let me know at once how this strikes you because I expect a call at anytime.

"With sincere regards, I remain,

"Yours,

"(Signed) J. H. MERING."

The plaintiff, Suzanne P. Harbeson, in consideration of James H. Mering's promise and agreement to cancel the third of said notes, did on the 25th day of October, 1927, pay the sum of $3,555.67, making the total amount of the purchase price for said property as of the date of payment the total sum of $18,728.79, which it is alleged, was several times the market value of the real estate described in the mortgage.

On September 23, 1927, Mering wrote Harbeson, in part, viz:

"Now if you can come through this time, I'll continue to pay the interest here to the bank and when the next note comes due with the suits I have settled, I can lift it easily and will then forward you the note and mortgage."

It is the contention of Mrs. Harbeson that she paid note number two to Mr. James H. Mering upon the express agreement and understanding that he would surrender, cancel and mark paid note number three sought to be collected by the foreclosure suit. Mr. Mering contends that his agreement with Mrs. Harbeson to cancel, deliver and mark paid note number three upon the payment of note number two was contingent upon his winning a certain law suit then pending against the Pennsylvania Trust Company.

Honorable C. C. Youmans, to whom the case was referred as a Special Master, recommended that a final decree be entered dismissing the bill of complaint and that the mortgage be cancelled of record. Exceptions were filed to the report, and the Honorable Ross Williams, Circuit Judge, on final hearing was of the view and so held that there was no sufficient agreement based upon a lawful consideration to support the cancellation of the third note, and bottomed his ruling on 1 American Juris. 217, and entered a decree for the full amount of the note, interest, attorney's fees and court costs.

Counsel for the respective parties admit that the controversy here had its inception during the Florida boom period. The mortgage and notes are dated in June, 1925, while the agreement to cancel note number three was made during the month of September, 1927, shortly after the second note matured and prior to its payment. This Court takes judicial notice of the

1925 land boom, its disastrous collapse and the extreme deflation in Florida real estate values. See City of Coral Gables v. State, 128 Fla. 874, 176 So. 40, And that the boom prevailed in Florida during 1925 and bursted early in 1926, See Gryzmish vs. Krim, 126 Fla. 191, 170 So. 717; Smith v. Massachusetts Mut. Life Ins. Co., 116 Fla. 390, 156 So. 498, 95 A. L. R. 508.

On September 1, 1927, Suzanne P. Harbeson had invested in the two lots located in Dade County, Florida, the sum of $15,173.12 and at that time there was no demand for real estate and it was in her mind, as shown by the testimony, to take her losses. James H. Mering, on September 1, 1927, was being pressed by the Pennsylvania Trust Company for the payment of his $10,000.00 note and suit was threatened against him. The Pennsylvania Trust Company at the time could have foreclosed its mortgage and obtained title to the two lots described in the mortgage. James H. Mering was pressed for cash and suit threatened and in his letter of September 1, 1927, among other things, said: ". . . I am certain I can lift it (meaning the third note) without loss to you and I will certainly be glad to relieve you of it, as you have already taken a big gambler's chance on making money out of this property. I can give you my word that this note (meaning the second note) will be the last you will have to pay. . . "

On the strength of the statements appearing in the letters, Suzanne P. Harbeson, on October 25, 1927, paid the second note with the understanding that James H. Mering would pay the Pennsylvania Trust Company his $10,000.00 note and obtain the third

note and transmit it to the plaintiff as he had agreed so to do.

The lower court was of the view that there was no consideration passing from Suzanne P. Harbeson to James H. Mering to support the agreement for a cancellation of the third note. The consideration, as we glean from the record, was the payment on October 25, 1927, of the sum of $3,555.67, for the second note and in the payment of this sum James H. Mering agreed to cancel the third note, the basis of this litigation. It appears there was ample testimony to support a consideration when Suzanne P. Harbeson paid James H. Mering and Pennsylvania Trust Company the sum of $3,555.67 for the two notes, one of which was immediately delivered and the third was to be obtained, cancelled and delivered by Mering to Harbeson. In treating the question of a consideration this Court, in the case of Dorman v. Publix-Saenger-Sparks Theatres, Inc., 135 Fla. 284, 184 So. 886, in part said:

"The consideration required to support a simple contract need not be money or anything having monetary value, but may consist of either a benefit to the promisor or a detriment to the promisee. Williston on Contracts, Vol. 1, Sec. 102 (1921 Ed); Elliott on Contracts, Vol. 1, Sec. 203, (1913 Ed.); Tampa Northern R. Co. v. City of Tampa, 104 Fla. 481, 140 So. 311; rehearing denied, 105 Fla. 367, 141 So. 296.

" 'It is not necessary that a benefit should accrue to the person making the promise; it is sufficient that something valuable flows from the person to whom it is made, or that he suffers some prejudice or inconvenience, and that the promise is the inducement to

the transaction. Indeed, there is a consideration that if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not.' 13 C. J., Contracts, Sec. 150, pp. 315-316. See also Henderson v. Kendrick, 82 Fla. 110, 89 So. 635; Bigelow v. Bigelow, 95 Maine 17, 49 Atl. 49."

While Mr. Mering admits that he made the promise to the plaintiff to cancel the "third note" and accepted payment in full for the second note, he asserts that the agreement to cancel and surrender the third note was not lawfully binding on him because he lost his law suit against the Pennsylvania Trust Company. He does not offer to do equity or to return to the plaintiff the sum of $3,555.67, or any part thereof, received under his promise to cancel and surrender the third note. He who seeks equity must do equity. The promises in his two letters induced the plaintiff to pay the second note, which it appears reasonable would never have been paid without the promise or agreement to cancel the third note. He takes the plaintiff's money and applies it to his indebtedness to the Pennsylvania Trust Company, with other funds, and retires his $10,000.00 note, and many years after making his promise and agreement to cancel steps into a court of equity and explains away in the most plausible manner his agreement and promise to cancel.

The original opinion and judgment of this Court is hereby receded from and the original decree appealed from is hereby reversed with directions to the lower court to enter an order dismissing the bill of com-

plaint of James H. Mering and to enter an order granting the relief as prayed for in the bill of complaint filed by Suzanne P. Harbeson and husband.

It is so ordered.

BROWN, C. J., WHITFIELD and TERRELL, J. J., concur.

BUFORD, ADAMS and THOMAS, J. J., adhere to Original Opinion.

BROWN, C. J. (concurring).—I agree with Mr. Justice CHAPMAN that there *was* a consideration for Mering's promise to cancel the third note if Mrs. Harbeson would pay the second note, which second note she did pay on the strength of Mering's promise. If Mrs. Harbeson had been personally bound to pay the second note, and had promised to do and had done no more than she could have been compelled to do by legal proceedings, there would probably have been no consideration for Mering's promise to cancel the third note. But Mrs. Harbeson was not personally liable to pay that note. The note, it is true, was secured by a lien on her property, the value of which was at the time greatly reduced and very dubious, but, being a married woman, she was not personally liable and no judgment or deficiency decree could have been secured against her on that note. So when she accepted Mering's proposition that if she would pay the second note, he would cancel the third note, and on the strength of this proposal she acted thereon and paid the second note. She did something which the law did not require her to do. Therefore, there was a valuable and legal consideration, on the facts of this case, for Mering's promise.