James LUDVIK, Appellant (Plaintiff),

v.

JAMES S. JACKSON COMPANY, INC., an Indiana corporation, Appellee (Defendant).

JAMES S. JACKSON COMPANY, INC., an Indiana corporation, Appellant (Defendant),

v.

James LUDVIK, Appellee (Plaintiff).

Nos. 5426, 5427.

Supreme Court of Wyoming.

Oct. 27, 1981.

Rehearing Denied Nov. 24, 1981.

Frank J. Jones, Wheatland, for appellant in No. 5426 and appellee in No. 5427.

William R. Jones and Eric M. Alden of Jones, Jones, Vines & Hunkins, Wheatland, and John D. Ulmer, Goshen, Ind., for appellee in No. 5426 and appellant in No. 5427.

Before ROSE, C. J., RAPER, THOMAS and ROONEY, JJ., and TAYLOR, District Judge.

THOMAS, Justice.

This case raises a question of priority between successive assignments of a purchaser's interest in a contract for the sale of land located in Wyoming. One of the assignments was made pursuant to an order entered in the United States District Court for the Northern District of Indiana, and the extraterritorial effect of the Wyoming statute providing for the filing of a notice lis pendens is a critical factor. The district court found in favor of the assignee pursuant to the order of the United States District Court for the Northern District of Indiana, but it also awarded damages to the competing assignee for amounts he had paid on the contract for the sale of land. We shall hold that the Wyoming lis pendens statute has no extraterritorial efficacy, and for the reasons indicated below we will reverse the judgment of the district court.

It is helpful to list the participants in this litigation and the matters leading up to it. They are:

James Ludvik (hereinafter referred to as Ludvik). Ludvik was the plaintiff in the district court, and is the assignee of the contract for the sale of land from Horseshoe Creek Limited.

James S. Jackson Company, Inc. (hereinafter referred to as Jackson). Jackson was the defendant in the action below, although it also brought a counterclaim. It is the assignee of the contract for the sale of land pursuant to the order of the United States District Court for the Northern District of Indiana.

James F. K. Centlivre (hereinafter referred to as Centlivre). Centlivre was the owner of real property in Platte County, Wyoming, near Glendo. He was the seller under a Contract for Deed entered into with Horseshoe Creek Limited, a partnership, as buyer.

Horseshoe Creek Limited, a Colorado general partnership (hereinafter referred to as Horseshoe). Horseshoe was a partnership formed by Fred M. Meyer and Peter T. Scifo with Meyer owning a two-thirds interest and Scifo owning a one-third interest. They later conveyed their interests to two Colorado corporations. This partnership was the purchaser under the Contract for Deed with Centlivre as seller. It assigned its rights under the contract to Ludvik. It

also agreed to assign a security interest in the Contract for Deed to Jackson.

Fred M. Meyer (hereinafter referred to as Meyer). An original partner in Horseshoe Creek Limited. He was also an owner of the corporate stock in Peakay's Eatery, Inc., and he described himself as the owner (presumably because of stock ownership) of Meyer Hog Farms, Inc.

Peter T. Scifo (hereinafter referred to as Scifo). The original partner in Horseshoe Limited, who owned a one-third interest in Horseshoe Creek Limited. He was also an officer and director of Peakay's Eatery, Inc.

Car-ro, Inc. It is a Colorado corporation, which is the other successor partner in Horseshoe Creek Limited. It is the owner of Meyer's two-thirds interest in Horseshoe Creek Limited, which was conveyed to it.

Taras, Inc. Taras, Inc., is a Colorado corporation. It is the successor in interest of Scifo with respect to Horseshoe Creek Limited, his one-third partnership interest having been sold to Taras, Inc.

Peakay's Eatery, Inc. (hereinafter referred to as Peakay's). This was a corporation intended to operate eating establishments which would be a market for the hogs raised by Meyer Hog Farms, Inc. It contracted with Jackson for the construction of buildings. In the process it became indebted to Jackson, and that indebtedness was assumed and guaranteed by Horseshoe and Meyer Hog Farms, Inc. Meyer was the principal individual in these several enterprises.

A chronology of the significant events also is helpful to the reader. Those dates and events are:

October 1, 1976. Meyer and Scifo created Horseshoe according to Colorado law.

November 9, 1976. Contract for Deed entered into between Horseshoe as buyer and Centlivre as seller.

February 4, 1977. Meyer and Scifo conveyed their interests in Horseshoe to Car-ro, Inc., and to Taras, Inc., respectively.

August 4, 1977. Meyer signed an agreement pursuant to which he assigned "his interest" in the Centlivre contract to James Jackson, as an individual. Meyer at that time purported to act as president of Horseshoe.

December 17, 1977. An agreement was entered into between Jackson, Peakay's, Horseshoe and Meyer Hog Farms, Inc., pursuant to which Horseshoe agreed to pledge partnership assets, including a certain contract with Centlivre, to assure payment of obligations due Jackson arising out of the construction of restaurants for Peakay's and a promissory note.

December 6, 1978. Jackson initiated an action in the United States District Court for the Northern District of Indiana to secure a judgment for money due it pursuant to the guarantee and to obtain an assignment of the Centlivre contract by Horseshoe.

December 6, 1978. Jackson filed in Platte County, Wyoming, a "Notice of Pendency of Action" based upon the case filed in the United States District Court for the Northern District of Indiana.

January 18–23, 1979. Horseshoe assigned the Centlivre contract to Ludvik. The assignment was executed by Taras, Inc., on January 18, 1979, and by Car-ro, Inc., on January 23, 1979.

August 29, 1979. A compromise and settlement of the litigation in the United States District Court for the Northern District of Indiana was filed with the court.

December 17, 1979. Judgment purportedly based upon the Compromise and Settlement Agreement was entered in the United States District Court for the Northern District of Indiana.

January 2, 1980. The United States Marshal for the Northern District of Indiana was ordered to make an assignment of the Centlivre contract on behalf of Horseshoe to Jackson.

January 4, 1980. The assignment was made of the Centlivre contract to Jackson on behalf of Horseshoe by the United States Marshal for the Northern District of Indiana.

In addition to the foregoing chronology, some of the language of the documents presented to the trial court is significant. In the December 17, 1977, agreement the following language appears pertaining to the Centlivre contract:

"6. *Payment of Obligation.* \* \* \* Further, in the event of the sale by Horseshoe Creek Limited of any of its assets and in particular its interest in that certain contract with James F. K. Centlivre dated November 9, 1976, for certain real estate in the State of Wyoming, then to the extent of such cash proceeds received, the same shall be applied upon the then existing unpaid balance of the account due Jackson.

"7. *Additional Consideration.* As a part of the consideration herein, the parties hereto, either jointly or severally, will act to cause the following interests to be transferred to Jackson, its assigns or nominee, as Jackson may in writing direct:

\*    \*    \*    \*    \*    \*

"D. *A security interest* in a certain contract for deed entered into on November 9, 1976 between James F. K. Centlivre and Horseshoe Creek Limited of certain property from James F. K. Centlivre located in Platt [sic] County, Wyoming." (Emphasis added.)

The complaint filed on December 6, 1978, in the United States District Court for the Northern District of Indiana relied upon both the August 4, 1977, agreement signed by Meyer and the December 17, 1977, agreement. In the prayer for relief Jackson requested:

"(2) Upon the hearing on the merits, this Court issue its order specifically requiring the Defendant, Horseshoe Creek Limited, to assign to the Plaintiff all of its right, title and interest in and to the said Contract for Deed."

The document recorded in Wyoming reads as follows:

"NOTICE OF PENDENCY OF ACTION

"NOTICE IS HEREBY GIVEN that James S. Jackson Co., Inc., an Indiana Corporation, has filed an action against Horseshoe Creek Limited, a Colorado General Partnership, and Meyer Hog Farms, Inc., a Colorado Corporation, in the United States District Court of the Northern District of Indiana, South Bend Division, Civil Action # S–78–0271, the object of which action is to compel the Defendant to assign unto the Plaintiff its right, title and interest in and to a Contract for Deed wherein Defendant is purchasing the real property described on Exhibit A hereto annexed and by this reference made a part hereof."

In connection with the action in the United States District Court for the Northern District of Indiana, the Compromise and Settlement Agreement which was entered into provided in pertinent part as follows:

"D. If the Defendants fail to pay to Plaintiffs the aforementioned One Hundred Seventy-five Thousand Dollars ($175,000.00) when due, the Defendants agree and consent to this Court entering a judgment against them, jointly and severally, in the amount of Three Hundred Fifty-two Thousand Ten Dollars and Fifty-four Cents ($352,010.54) with interest at ten percent (10%) per annum from March 30, 1979, to date of judgement, all without relief from valuation or appraisment [sic] laws and with attroney [sic] fees in the amount of Fifteen Thousand Dollars ($15,000.00), *together with a decree requiring Horseshoe Creek Limited to assign to Plaintiff a security interest in that certain deed dated November 9, 1976, between James F. K. Centlivre and Horseshoe Creek Limited, of real property located in Platte County, Wyoming, as security for the money judgement entered by the Court.* \* \* \*" (Emphasis added.)

The critical language in the Order entered by the United States District Court for the Northern District of Indiana reads as follows:

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that Joseph N. Novotny, United States Marshall of this District, execute, acknowledge and deliver to the Plaintiff in the form at-

tached, *an Assignment of Horseshoe Creek Limited's Contract for Deed between James F. K. Centlivre and Horseshoe Creek Limited* of real property located in Platte County, Wyoming, to-wit: [Hereinafter follows a description of the property.]" (Emphasis added.)

It thus appears that Horseshoe, as buyer of real property in Wyoming, pursuant to a Contract for Deed, agreed that it would, as Jackson might direct in writing, assign a security interest in that contract to Jackson. Horseshoe never did assign the contract or a security interest in it to Jackson. Documentation in the record does not disclose whether Jackson ever, in writing, directed the assignment, although counsel for Jackson testified that demand for the assignment had been made prior to filing the suit against Horseshoe and Meyer Hog Farms, Inc. After that agreement, Horseshoe did assign its interest as buyer in the Centlivre contract to Ludvik. The action in the United States District Court for the Northern District of Indiana was pending at the time of that assignment, and the Notice of Pendency of Action had been filed in Platte County, Wyoming, prior to the assignment.

Payment not having been made when due pursuant to the Compromise and Settlement Agreement, a judgment was entered in the United States District Court for the Northern District of Indiana on December 17, 1979, and pursuant to that judgment and an order entered consistent therewith, the United States Marshal made an assignment of the Centlivre contract on behalf of Horseshoe to Jackson on January 4, 1980.

This litigation between Ludvik and Jackson followed. The matter first became a problem for Ludvik when the title insurance company from which he sought a commitment for title insurance listed among the exclusions any loss or damages resulting from a judgment that might be entered in the suit referenced in the Notice of Pendency of Action. He then sought relief by filing an action in the district court in Platte County prior to the entry of judgment in the United States District Court for the Northern District of Indiana. He requested that his title be quieted against Jackson and that the Notice of Pendency of Action be set aside and declared invalid and void. He also sought actual and punitive damages because of the alleged malicious recording of the Notice of Pendency of Action. Jackson, by answer, denied that Ludvik was entitled to any relief, and by counterclaim Jackson sought to have the assignment ordered by the United States District Court for the Northern District of Indiana recognized as superior to any interest that Ludvik might have in the property in question. Ludvik denied the claims of the defendant Jackson, and a trial resulted in a judgment in favor of Jackson, recognizing the assignment ordered by the United States District Court for the Northern District of Indiana as superior to Ludvik's interest and ordering immediate possession in favor of Jackson. The court did require that Ludvik be reimbursed in the sum of $129,648.14 for payments made on the contract, which judgment was reduced by $42,769.50, representing a reasonable rental for the use of the property from January 21, 1979, until the time that possession was delivered to Jackson. Ludvik has appealed from the judgment in favor of Jackson with respect to the superior interest in the property, and Jackson has appealed from the judgment awarding money relief to Ludvik.

In his appeal Ludvik states the issues as follows:

"1. Did the trial court err in finding that an Assignment of Contract for Deed, issued by a U.S. Marshall for the U.S. District Court for the Northern District of Indiana to James S. Jackson Co. (Defendant below) was superior to that Assignment given by a contract purchaser of the lands, Horseshoe Creek Limited, to James Ludvik (Plaintiff below), the assignments involving lands located exclusively in Platte County, Wyoming?

"2. If the trial court did not err in the above determination, was the amount of rental the court ordered paid by Ludvik to Jackson Co. excessive and not supported by the evidence?"

Jackson agrees with that statement of issues.

In Jackson's appeal the issues are stated as follows:

"1. The Court improperly granted the Plaintiff money damages for a cause of action which was never plead [sic] or otherwise asserted by the Plaintiff.

"2. The Court should not have granted the Plaintiff credit for expenditures made while he was a lis pendens purchaser and a mala fides trespasser.

"3. The Defendant's Motion for a New Trial should have been granted upon the Defendant's presentation of newly discovered documents showing that Plaintiff was engaged in a scheme to defraud Defendant and others."

Ludvik agrees with that statement of issues except he asserts that the reference to "money damages" in the first issue should refer to "restitution for expenditures" parallel to the second issue.

We first consider whether the assignment ordered by the United States District Court for the Northern District of Indiana was superior to Ludvik's assignment because of the Notice of Pendency of Action filed in Platte County, Wyoming. The Notice of Pendency of Action purports to have been filed pursuant to § 1–6–108, W.S.1977, which reads as follows:

"In an action in a state court or in a United States district court affecting the title or right of possession of real property, or in an action between husband and wife, the plaintiff at the time of filing the complaint and the defendant at the time of filing his pleading when affirmative relief is claimed or at any time afterward, may file in the office of the county clerk in which the property is situate a notice of pendency of the action contain-

ing the names of the parties, the object of the action or defense and a description of the property in that county affected thereby. From the time of filing the notice a subsequent purchaser or encumbrancer of the property shall have constructive notice of the pendency of the action." [1]

This statute must be read in conjunction with § 1–6–106, W.S.1977, which reads as follows:

"When a summons has been served or publication made, the action is pending so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject matter thereof, as against the plaintiff's title."

This latter statute succinctly states what is known in the law as the common-law doctrine of lis pendens. The common-law doctrine of lis pendens correctly is delineated in *Herman v. Goetz*, 204 Kan. 91, 460 P.2d 554 (1969), in which the Kansas court said, 460 P.2d at 559:

"In *Travis v. Topeka Supply Co.*, 42 Kan. 625, 628, 22 P. 991, this court stated the three elements of a valid and effective *lis pendens* are: (1) The property must be of a character to be subject to the rule of *lis pendens*; (2) the court must acquire jurisdiction both of the person and the property; and (3) the property must be sufficiently described in the pleadings. The litigation must be about some specific thing or property which will be affected by the termination of the suit (54 C.J.S. Lis Pendens § 4, p. 574)."

It is obvious in this instance that the United States District Court for the Northern District of Indiana did not have jurisdiction over the real property in the State of Wyoming, and under the common-law doctrine

---

1. We are not unmindful of the provisions of 28 U.S.C. § 1964. From the legislative history relating to that statute we recognize that its purpose was to afford to litigants in a federal court in any state the same protection they would enjoy if they were litigating in the state courts. S.Rep.No. 2131, 85th Cong., 2nd Sess. 4 (1958). The Senate Report notes that state legislation will be necessary to authorize the filing of notice of federal suits. Indeed that is exactly what later happened in Wyoming. Ch. 125, S.L. of Wyoming 1965. The federal statute, and the amendment to the Wyoming statute, however, give no special efficacy to the notice based upon the pending action in the United States District Court for the Northern District of Indiana.

of lis pendens no priority could attach to the action of that court by virtue of the pending action. *Wilson v. Hefflin,* 81 Ind. 35 (1881); *Stewart v. Wheeling & L. E. Ry. Co.,* 53 Ohio St. 151, 41 N.E. 247 (1895).

■ At common law the doctrine of lis pendens had no efficacy outside the territorial jurisdiction of the court in which the action was pending. *Walker v. Houston,* 176 Ga. 878, 169 S.E. 107 (1933); *Carr v. Lewis Coal Co.,* 96 Mo. 149, 8 S.W. 907 (1888); *Stewart v. Wheeling & L. E. Ry. Co.,* supra; *Flanagan v. Clark,* 156 Okl. 230, 11 P.2d 176 (1932); *Shelton v. Johnson,* 4 Sneed, 672, 70 Am.Dec. 265 (Tenn.1857); *First Nat. Bank of Webster Springs v. McGraw,* 85 W.Va. 298, 101 S.E. 474 (1919). We then must consider whether the legislature of the State of Wyoming in adopting § 1–6–108, W.S.1977, desired to expand the common-law doctrine of lis pendens by providing for extraterritorial application. We are persuaded that no such intention can be attributed to the legislature. The statute provides for the filing of a notice in the county in which the property is situate, and obviously is designed to permit a notice of lis pendens within the State of Wyoming with respect to property located in the state in relation to an action brought in another county or in the United States District Court for the District of Wyoming. This construction is consistent with the position this court took in *Kane v. Kane,* Wyo., 577 P.2d 172 (1978). In that case the court said, 577 P.2d at 175:

"We now come to the third issue raised by this appeal, that is, whether the district court had the power—for such is the essence of jurisdiction—to make disposition of the land of the defendant located outside the borders of Wyoming.

"We think the issue settled, at least since *Fall v. Eastin,* 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65, 23 L.R.A., N.S., 924 (1909), that the court of one state has no power to directly affect title to land located wholly within the borders of another. Decrees and judgments purporting to this effect are void, and to the extent the decree before us purports to so do it must fail. * * * *"

The benefit of that proposition effectively would be denied to owners of real property in Wyoming if by the filing of a notice of lis pendens relating to an action pending in another jurisdiction the property would be bound by the result of any judgment in the foreign court. That, of course, is what Jackson claims in this case.

■ In *Kane v. Kane,* supra, this court recognized that a court of equity having authority to act upon the person may indirectly act upon real estate located in another state through the coercive power it has over the person over whom it has jurisdiction. We, therefore, do not deny the power of the United States District Court for the Northern District of Indiana to order the assignment by Horseshoe Creek Limited. Rule 70 of the Federal Rules of Civil Procedure provides specifically that if when directed to deliver a deed or other documents or to perform any other specific act, the party so directed fails to comply, the court may direct the act to be done by some other person appointed by the court and the act when so done has like effect as if done by the party. The same rule recognizes, however, that for the United States District Court to enter judgment divesting the title of any party and vesting in others, the property has to be within the district. *Stewart Oil Co. v. Sohio Petroleum Co.,* 185 F.Supp. 765 (D.Ill.1960). In this respect Rule 70, Fed.R.Civ.P., appears to be consistent with case law limiting the common-law doctrine of lis pendens to property within the district. *Atlas Ry. Supply Co. v. Lake & River Ry. Co.,* 134 F. 503 (C.C.N.D. Ohio 1905). It appears under the specific language of this rule that the assignment by the United States Marshal for the Northern District of Indiana was effective only from the date of the assignment. Ludvik's assignment from Horseshoe Creek Limited antedated that assignment by almost a year.

■ It must be remembered in this instance that no special status attaches to the United States District Court for the Northern District of Indiana because it is a feder-

al court. When a United States District Court is sitting in the exercise of its diversity jurisdiction it acts simply as another court of the state. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1944); *Wyoming Farm Bureau Mutual Insurance Company, Inc. v. State Farm Mutual Automobile Insurance Company*, 467 F.2d 990 (10th Cir. 1972); *Fehling v. Cantonwine*, 379 F.Supp. 1250 (D.Wyo. 1974), affirmed 522 F.2d 604 (10th Cir. 1975); *Bank of Waukegan v. Freshly*, 421 F.Supp. 1033 (N.D.Ind.1976).

It thus appears that in terms of chronological priority Ludvik's assignment is superior to that of Jackson's unless the Notice of Pendency of Action filed pursuant to § 1–6–108, W.S.1977, had the effect of invoking the provisions of § 1–6–106, W.S. 1977. The Notice of Pendency of Action of the action filed in the United States District Court for the Northern District of Indiana was ineffective for that purpose. There then was no statutory provision which prevented Ludvik from acquiring the interest of Horseshoe as a purchaser in the Centlivre contract for deed while the action by Jackson against Horseshoe was pending in the United States District Court for the Northern District of Indiana. Whether the action in the United States District Court for the Northern District of Indiana could be considered an action "affecting the title or right of possession of real property" in Wyoming to fit it within the provisions of § 1–6–108, W.S.1977, is itself questionable. We need not dispose of that troublesome issue, however, because of our holding that the statute has no application.

■ We turn then to a consideration of whether Ludvik should be foreclosed from the assignment of the Centlivre contract because of his actual knowledge of the court proceedings in the United States District Court in Indiana. Among its comments in the Final Judgment the district court found:

"9. The Court finds that the Plaintiff accepted the Assignment of the Contract knowing of the pending suit in the United States District Court in Indiana and therefore took possession subject to the rights of the parties to the litigation as finally determined by the Judgment of that Court.

"10. The Court finds that the Plaintiff herein cannot be considered a bona fide purchaser."

The ninth paragraph of the findings is consistent with the application of the doctrine of lis pendens. The tenth paragraph would not necessarily depend upon that doctrine, and we must consider the status of Ludvik as a bona fide purchaser a matter of law.

■ Ludvik was apprised by the commitment for title insurance dated January 17, 1979, that there was a civil action pending which was described in the Notice of Pendency of Action. On the assumption that this charged Ludvik with a duty to investigate, he would have found in the court file in the United States District Court for the Northern District of Indiana the August 4, 1977, agreement signed by Meyer, and the December 17, 1977, agreement executed by Taras, Inc., for Horseshoe Creek Limited. The August 4, 1977, agreement does not appear to have been relied upon in connection with the disposition of the case by the United States District Court for the Northern District of Indiana, and indeed it is difficult to conceive of any way in which it could have been relied upon. As we indicated in *Peterson v. First National Bank of Lander*, Wyo., 579 P.2d 1038 (1978), it is a question of fact for the trial court to determine whether a party has notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact. We have noted above, language from the December 17, 1977, agreement which contemplated the possible sale by Horseshoe of its interest in the Centlivre contract. We also have quoted that portion of the language of that agreement which provided that Horseshoe would cause to be transferred to Jackson "*a security interest* in a certain contract for deed." (Emphasis added.) For our purposes here we will assume that the doctrine of equitable conversion caused Horseshoe's interest in the contract for deed to be real property and that the December 17, 1977,

agreement would have the effect of creating an equitable mortgage against that property.

We believe the wisdom of our decision to not hazard the rights of Wyoming property owners to the vagaries of judicial action in courts outside the State of Wyoming is illustrated by what occurred in this case. After the action was initiated in the United States District Court for the Northern District of Indiana the Compromise and Settlement Agreement quoted above was executed and filed in that court. Pursuant to its provisions, which were consistent with the December 17, 1977, contract, the agreement was that any judgment entered by the court would encompass "a decree requiring Horseshoe Creek Limited to assign to plaintiff *a security interest* in that certain deed." (Emphasis added.) Such a decree would have, consistent with the December 17, 1977, agreement, created a mortgage against Horseshoe Creek Limited's interest in the Contract for Deed. The United States District Court for the Northern District of Indiana, however, did proceed, we assume at the behest of counsel, to afford greater relief than that agreed to, and it ordered the assignment of the contract. Had it limited the relief to that agreed to, it would have ordered an assignment of a security interest which would have given Jackson only the right to come to the State of Wyoming and foreclose that mortgage. Even if Ludvik were not considered a bona fide purchaser with respect to such a mortgage, he would have had an opportunity to protect his interest in connection with the foreclosure proceedings by bidding at the sale.

The foregoing is primarily of academic interest, however, because of the Compromise and Settlement Agreement which was entered into by the parties in the United States District Court for the Northern District of Indiana. It, like any other contract, is subject to construction as a matter of law, and the intent of the parties is to be gathered from the four corners of the instrument. *Shepard v. Top Hat Land & Cattle Co.*, Wyo., 560 P.2d 730 (1977); *Governor Apartments, Inc. v. Carney*, 342 Mass.

351, 173 N.E.2d 287 (1961). Our reading of the Compromise and Settlement Agreement persuades us that properly construed as a matter of law it manifests an intention of the parties to substitute it in lieu of the December 17, 1977, agreement. See *Harbeson v. Mering*, 147 Fla. 174, 2 So.2d 886 (1941); *Governor Apartments, Inc. v. Carney*, supra; *Loraas v. Connolly*, N.D., 131 N.W.2d 581 (1964); and *The Praetorians v. Simons*, Tex.Civ.App., 187 S.W.2d 238 (1945). Counsel for Jackson testified that a deliberate effort was made to obtain the signature of Meyers' wife as president of Car-ro, Inc., for Horseshoe Creek Limited. It among other things states:

"1. *Purpose*: This agreement is made as a compromise between the parties for the complete and final settlement of their claims, differences and causes of action with respect to the dispute described below."

It also provides in paragraph 3(D):

" * * * A copy of this agreement shall be filed with the Court and the parties are agreed that it shall form the basis of a judgement to be entered in this action in the event the Defendants fail to pay Plaintiff as agreed upon."

In addition new consideration was incorporated in the Compromise and Settlement Agreement. The net effect is that the claimed rights of Jackson, according to the December 17, 1977, agreement were satisfied by the Compromise and Settlement Agreement entered into after Ludvik took his assignment, and consequently the effect of any actual notice he may have of the December 17, 1977, agreement does not prevent his being a bona fide purchaser of the Contract for Deed. Jackson's claims under that agreement disappeared when the Compromise and Settlement Agreement was made and filed.

Since his assignment antedated any assignment to Jackson pursuant to the order of the United States District Court for the Northern District of Indiana, Ludvik had priority unless the Notice of Pendency of Action was effective to invoke the provi-

sions of § 1–6–106, W.S. 1977. We have held that it was not, and it is our conclusion that Ludvik's interest should be recognized as superior to that of Jackson. It further is free from any claim of lien by Jackson.

The judgment of the district court is reversed, and the case is remanded, with instruction to the district court to enter judgment in accordance with this decision, which will of course require an adjustment of the money award to Ludvik. Under the circumstances the issues of Jackson's appeal are moot, and there is no need to consider its claims under its motion for a new trial relating to fraud on the part of Ludvik since that conduct had no effect upon the situation in accordance with this opinion.

ROONEY, Justice, concurring.

In addition to the reason for reversal set forth in the opinion of Justice Thomas, I believe a reversal is proper because the Indiana court could not act with reference to Wyoming real property in the manner in which it attempted to do so. In other words, I do not believe that an interest in real property situated in Wyoming can be properly transferred by a third party not having that interest and not having any other property interest therein—even when such transfer is made upon an order of an Indiana federal court.

I do not contest the existence of in personam jurisdiction by the Indiana court over Horseshoe Creek Limited. Horseshoe Creek Limited made an appearance in a matter pending before that court and, thus, submitted to in personam jurisdiction by it. Since the Indiana court had in personam jurisdiction, there is no argument but that it could order Horseshoe Creek Limited to act with reference to any proper interest held by Horseshoe Creek Limited in Wyoming real property. *Kane v. Kane*, Wyo., 577 P.2d 172 (1978); *Fall v. Eastin*, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909).

"But, however, plausibly the contrary view may be sustained, we think that the doctrine that the court, not having jurisdiction of the *res*, cannot affect it by its decree, nor by a deed made by a master

in accordance with the decree, is firmly established. The embarrassment which sometimes results from it has been obviated by legislation in many states. In some states the decree is made to operate *per se* as a source of title. This operation is given a decree in Nebraska. In other states, power is given to certain officers to carry the decree into effect. Such power is given in Washington to commissioners appointed by the court. It was in pursuance of this power that the deed in the suit at bar was executed. *But this legislation does not affect the doctrine which we have expressed, which rests, as we have said, on the well-recognized principle that, when the subject-matter of a suit in a court of equity is within another state or country, but the parties within the jurisdiction of the court, the suit may be maintained and remedies granted which may directly affect and operate upon the person of the defendant and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or refrain from certain acts toward it, and it is thus ultimately but indirectly affected by the relief granted. In such case, the decree is not of itself legal title, nor does it transfer the legal title. It must be executed by the party, and obedience is compelled by proceedings in the nature of contempt, attachment or sequestration. On the other hand, where the suit is strictly local, the subject-matter is specific property, and the relief, when granted, is such that it must act directly upon the subject-matter, and not upon the person of the defendant, the jurisdiction must be exercised in the state where the subject-matter is situated.* [Citation.]

"This doctrine is entirely consistent with the provision of the Constitution of the United States, which requires a judgment in any state to be given full faith and credit in the courts of every other state. This provision does not extend the jurisdiction of the courts of one state to property situated in another, but only makes the judgment rendered conclusive on the

merits of the claim or subject-matter of the suit. 'It does not carry with it into another state the efficacy of a judgment upon property or persons, to be enforced by execution. To give it the force of a judgment in another state it must be made a judgment there; and can only be executed in the latter as its laws may permit.' *M'Elmoyle v. Cohen,* 13 Pet. 312, 10 L.Ed. 177." (Emphasis added.) *Fall v. Eastin,* supra at 30 S.Ct. 7–8.

If a document executed by Horseshoe Creek Limited transferring a proper interest in Wyoming real property were recorded in the office of the appropriate Wyoming County Clerk and Registrar of Deeds, a chain of title with reference thereto could be followed into and out of Horseshoe Creek Limited through an examination of records in Wyoming. However, a document executed by a third party would not reflect such chain of title through reference to records in Wyoming. An out-of-state court order authorizing such transfer—even if a certified copy thereof were made of record in Wyoming—would necessitate a review by an abstractor or title examiner of the supporting documents filed in the matter in the foreign court. A requirement to do so would be improper and would be violative of the "principles of interstate federalism embodied in the Constitution." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 293, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980).

Rule 70, F.R.C.P. provides:

"If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the *court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party.* On application of the party entitled to performance, the clerk shall issue a writ of attachment or sequestration against the property of the disobedient party to compel obedience to the judgment. The court may also in proper cases adjudge the party in contempt. *If real or personal property is within the district, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law.* When any order or judgment is for the delivery of possession, the party in whose favor it is entered is entitled to a writ of execution or assistance upon application to the clerk." (Emphasis added.)

The rule concerns property "within the district" and prohibits direct action by the court on property in another district. The court cannot do indirectly that which it cannot do directly. The rule does not establish a basis for jurisdiction. *Georgia Central Credit Union v. Martin G.M.C. Trucks, Inc.,* 622 F.2d 137 (5th Cir. 1980).

"A Court may indirectly act on foreign real estate through its authority over the parties before it, but neither the Court's decree nor any conveyance under it, *except by the person in whom the title is actually vested,* can operate beyond the jurisdiction of the Court. * * * " *Mohr v. Allen,* 407 F.Supp. 483, 489, n. 3 (S.D. N.Y. 1976).

See *Stewart Oil Company v. Sohio Petroleum Company,* 185 F.Supp. 765 (E.D.Ill. 1960).

Accordingly, under Rule 70 and otherwise, the attempted transfer of a "security interest" in Wyoming real property by a third party pursuant to the order of the Indiana federal court was ineffective.

The suggestion made in connection with this case that the distinction between jurisdiction in rem and jurisdiction in personam was "obliterated" requires a response. It is true that the method or standard by which the existence of in personam jurisdiction and in rem jurisdiction was changed from that set forth in *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1878), by virtue of the decisions in *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945), and

*Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), but the distinction between in rem jurisdiction and in personam jurisdiction is so ingrained into our judicial process that its continued existence is necessary for equitable and rational consideration in several areas of the law, e.g. in personam jurisdiction can be waived or consented to, but subject matter jurisdiction may not, *Church v. Quiner*, 31 Wyo. 222, 224 P. 1073 (1924); *White v. Board of Land Commissioners*, Wyo., 595 P.2d 76 (1979); Rule 12(h)(1), W.R.C.P. versus Rule 12(h)(3), W.R.C.P.[1] The Wyoming long-arm statute, § 5–1–107, W.S.1977 has reference only to in personam jurisdiction.[2]

The Court in *Shaffer v. Heitner*, supra, recognized that the standards set forth therein for determining jurisdiction in both in rem and in personam situations could not be applied in cases such as those in which jurisdiction is based on status, e.g. domestic relations, and those in which it is based on "necessity"; e.g. property in a state and no other forum available. See footnotes 30 and 37, *Shaffer v. Heitner*, supra, pages 2582 and 2583 in 97 S.Ct. Justice Powell filed a concurring opinion in *Shaffer* only to express one reservation:

"I would explicitly reserve judgment, however, on whether the ownership of some forms of property whose situs is indisputably and permanently located within a State may, without more, provide the contacts necessary to subject a defendant to jurisdiction within the State to the extent of the value of the property. In the case of real property, in particular,

preservation of the common-law concept of *quasi in rem* jurisdiction arguably would avoid the uncertainty of the general *International Shoe* standard without significant cost to ' "traditional notions of fair play and substantial justice." ' * * * " 97 S.Ct. at 2586.

Mr. Justice Stevens expressed a similar reservation:

"How the Court's opinion may be applied in other contexts is not entirely clear to me. I agree with Mr. Justice POWELL that it should not be read to invalidate *quasi in rem* jurisdiction where real estate is involved. I would also not read it as invalidating other long-acepted methods of acquiring jurisdiction over persons with adequate notice of both the particular controversy and the fact that their local activities might subject them to suit. My uncertainty as to the reach of the opinion, and my fear that it purports to decide a great deal more than is necessary to dispose of this case, persuade me merely to concur in the judgment." 97 S.Ct. at 2587–2588.

In *Shaffer*, the Court extended *the standards* for determining the existence of in personam jurisdiction as set forth in *International Shoe Co. v. State of Washington*, supra, to a determination of the existence of in rem jurisdiction. But, in doing so, it recognized the existence of the two types of jurisdictions:

" * * * We think that the time is ripe to consider whether the standard of fairness and substantial justice set forth in *Inter-*

---

1. Rule 12(h)(1) and (3), W.R.C.P. reads:

   "(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

        *     *     *     *     *     *

   "(3) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

2. The title to the original enactment, Ch. 237, S. L. of Wyoming 1967, reads: "AN ACT to increase the protection which Wyoming's courts can provide its citizens, *by enlarging the personal jurisdiction* of Wyoming courts over persons outside Wyoming and providing additional methods of service of process." (Emphasis added.) The title to the present enactment, Ch. 178, S. L. of Wyoming 1977, reads: "AN ACT to amend W.S. 5–4.3; and to repeal W.S. 5–4.1 and 5–4.2 relating to jurisdiction of Wyoming courts; repealing enumerated grounds *for personal jurisdiction; allowing personal jurisdiction* in all cases except when prohibited by the Wyoming or United States Constitution; and providing for an effective date." (Emphasis added.)

*national Shoe* should be held to govern actions *in rem* as well as *in personam.*" (Emphasis not added.) 97 S.Ct. at 2581. "It appears, therefore, that jurisdiction over many types of actions *which now are or might be brought in rem* would not be affected by a holding that any assertion of state-court jurisdiction must satisfy the *International Shoe* standard. * * * " (Emphasis added.) 97 S.Ct. at 2582.

"We therefore conclude that all assertions of state-court jurisdiction must be evaluated according to *the standards set forth* in *International Shoe* and its progeny." (Footnotes omitted and emphasis added.) 97 S.Ct. at 2584.

Finally, it is to be noted that the thrust of the recent opinions of the Supréme Court of the United States has been to restrict the extent of the jurisdiction of the state courts over non-resident persons and things, rather than to enlarge it.

In 1878, the standards for jurisdiction of a state court over a non-resident, non-consenting defendant were established in *Pennoyer v. Neff,* supra, as follows: In personam jurisdiction exists only if the defendant was served with process while present in the state. In rem jurisdiction exists only if, at the commencement of the action, the court had control of property in the state owned by the defendant. In 1945, the standard relative to in personam jurisdiction was changed by *International Shoe Co. v. State of Washington,* supra, to a "minimum contacts" standard. The Court there said at page 158 of 66 S.Ct.:

" * * * due process requires only· that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations.]"

The old standard was supplemented but not abolished. It still applied if the defendant be "present within the territory of the forum" and to in rem jurisdiction.

As already noted, *Shaffer v. Heitner,* supra, extended the "minimum contacts" standard to in rem jurisdiction. But in doing so, the fact that the standard of "minimum contacts" and not "minimal contacts" was emphasized. A shareholder of a Delaware chartered corporation had brought a derivative action in Delaware against many of the corporation's officers and directors, none of whom had any contacts within Delaware. Delaware law provided that the situs of shares in a Delaware corporation was in Delaware regardless of where the certificates were located. Jurisdiction was asserted by sequestering the stock of the defendants. The Court did not accept the *Pennoyer v. Neff,* supra, standard, which would have afforded in rem jurisdiction, but held that although the court had control of the property in the state at the commencement of the action, the defendant did not have the "minimum contacts" with the state sufficient for jurisdiction.

The restriction on state jurisdiction over non-resident persons and things, even operating under long-arm statutes, is further evidenced by the Court's holdings in *Kulko v. Superior Court of California in and for City and County of San Francisco,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *World-Wide Volkswagen Corp. v. Woodson,* supra; and *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).

In *Kulko v. Superior Court of California, Etc.,* supra, the Court did not find the "minimum contacts" necessary for jurisdiction. It said at page 1696 of 98 S.Ct.:

"The Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants. See *Shaffer v. Heitner,* 433 U.S. 186, 198–200, 97 S.Ct. 2569, 2577, 53 L.Ed.2d 683 (1977). It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant. *Pennoyer v. Neff,* 95 U.S. 714, 732–733, 24 L.Ed. 565, 572 (1878); *International Shoe Co. v. Washington,* 326 U.S., at 316,

66 S.Ct., at 158. The existence of personal jurisdiction, in turn, depends upon the presence of reasonable notice to the defendant that an action has been brought. *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 313–314, 70 S.Ct. 652, 656–657, 94 L.Ed. 865 (1950), and a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum. *Milliken v. Meyer*, 311 U.S. 457, 463–464, 61 S.Ct. 339, 342–343, 85 L.Ed. 278 (1940). * * *

" * * * While the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice are, of course, to be considered, see *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), *an essential criterion in all cases is whether the 'quality and nature' of the defendant's activity* is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State. *International Shoe Co. v. Washington*, supra, 326 U.S., at 316–317, 319, 66 S.Ct., at 158, 159. Accord, *Shaffer v. Heitner*, supra, 433 U.S., at 207–212, 97 S.Ct., at 2581–2584; *Perkins v. Benguet Mining Co.*, 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952)." (Emphasis added.)

In *World-Wide Volkswagen Corp. v. Woodson*, supra, the Court said at page 565 of 100 S.Ct.:

"Nevertheless, we have never accepted the proposition that state lines are irrelevant for jurisdictional purposes, nor could we and remain faithful to the principles of interstate federalism embodied in the Constitution. * * * But the Framers also intended that the States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts. The sovereignty of each State, in turn, implied a limitation on the sovereignty of all of its sister States—a limitation express or implicit in both the original scheme of the Constitution and the Fourteenth Amendment.

\* \* \* \* \* \*

"Thus, the Due Process Clause 'does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.' *International Shoe Co. v. Washington*, supra [326 U.S.], at 319, 66 S.Ct., at 159. Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment. *Hanson v. Denckla*, supra, 357 U.S. [235], at 251, 254, 78 S.Ct. [1228], at 1238, 1240 [2 L.Ed.2d 1283].

\* \* \* \* \* \*

"This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. * * *"

*Rush v. Savchuk*, supra, involved an in rem case in which jurisdiction was premised upon the fact that defendant's insurer did business in, and was regulated by, the state of plaintiff's residence. The attachment of defendant's insurance policy in plaintiff's state of residence was held by the state court (Minnesota) to be intimately related to the litigation and a strong state interest was found in "facilitating recoveries for resident plaintiffs." *Savchuk v. Rush*, 311 Minn. 480, 272 N.W.2d 888, 891 (1978). The United States Supreme Court reversed, emphasizing defendant's activities in deciding the question of jurisdiction. It said:

" * * * it cannot be said that the *defendant* engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or rea-

sonable * * *." (Emphasis not added.) 100 S.Ct., at 573.

In these cases decided by the Supreme Court of the United States subsequent to the decision in *Shaffer v. Heitner,* supra, constant references were made to in personam jurisdiction and to in rem jurisdiction. The standard by which their existence is determined may now be the same, but the distinction between them is yet useful and has not been "obliterated."

The foregoing very brief summary of the evolution of state-court jurisdiction vis a vis due process is for the purpose of illustrating the move to restrict such jurisdiction over non-resident defendants and out of state property. The pivotal point here made, however, is that although in personam jurisdiction existed in the Indiana court over Horseshoe Creek Limited in connection with this matter, in rem jurisdiction did not exist over the Wyoming real property, and the Indiana court could act indirectly on the Wyoming real property only by exercising its in personam jurisdiction over Horseshoe Creek Limited—not by ordering a third party to make a conveyance of an interest in it.

RAPER, Justice, dissenting, with whom TAYLOR, District Judge, joins.

I must dissent.

I believe the approach taken by the majority in this case is erroneous and ill-advised. But of greater concern to me is the injustice that results from the majority's gymnastics in legalese and judicial repeal of § 1–6–108, W.S.1977. In order to appreciate the miscarriage of justice which results, facts in addition to those stated in the majority's opinion must be considered; and they speak loudly. As a result, I feel it necessary to provide a separate account of the history involved here.

## FACTS

On October 1, 1976, Fred M. Meyer and Peter T. Scifo executed a partnership agreement. Under the terms of this agreement a Colorado general partnership, known as Horseshoe Creek Limited (Horseshoe), was created.

This partnership, on November 9, 1976, entered into an agreement to purchase considerable ranch property which was located in Platte County, Wyoming and serves as the subject matter of this suit. The agreement was in effect a contract for deed and was executed by Fred Meyer, on behalf of Horseshoe, and James Centlivre, the owner of the land.

On February 4, 1977, Fred Meyer and Peter Scifo sold their respective interests in Horseshoe to Car-ro, Inc. and Taras, Inc. Fred Meyer testified concerning these corporations on direct examination as follows:

"Q. And what kind of entities were those?

"A. Those were two Colorado corporations.

"Q. Who were the shareholders in those corporations?

"A. Mine and my bother's [sic] children were shareholders of Car-ro, Inc., and the Scifo children—I call them children. There were a couple of them were of age—were the partners of Taras, Inc., or the shareholders of Taras, Inc., excuse me.

"Q. Who were the officers?

"A. My wife, my brother, my brother's wife, were the officers of Car-ro, Inc., and Peter Scifo and I don't know which of the other Scifos, were officers of Taras, Inc. I believe his sister was one of the officers."

The following was an amendment to the partnership agreement executed simultaneously with the change of partners:

"This Agreement is made and entered into this 4th day of February, 1977, by and among Fred M. Meyer (hereinafter called 'Meyer'), Peter T. Scifo (hereinafter called 'Scifo'), Car-Ro, Inc., a Colorado corporation, (hereinafter called 'Car-Ro'), Taras, Inc., a Colorado corporation, (hereinafter called 'Taras') and Horseshoe Creek Limited, a general partnership, (hereinafter called 'Partnership').

"WHEREAS, Meyer and Scifo are desirous of withdrawing as partners in the Partnership and Car-Ro and Taras are desirous of becoming partners.

"NOW, THEREFORE, IT IS MUTUAL-LY AGREED AS FOLLOWS:

\*   \*   \*   \*   \*   \*

"5. The said new partners specifically agree to all terms and conditions of that certain Partnership Agreement dated October 1, 1976.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands at Denver, Colorado, the day and year first above written.

"/s/   Fred M. Meyer
"Fred M. Meyer
"/s/   Peter T. Scifo
"Peter T. Scifo
"CAR–RO, INC.
"By /s/   Carolyn J. Meyer
"President
"TARAS, INC.
"By /s/   Peter T. Scifo
"President
"HORSESHOE CREEK LIMITED
"By /s/   Fred M. Meyer"

Accompanying the amendment was the following affidavit:

"KNOW ALL MEN BY THESE PRESENTS:

"That the undersigned have joined together this 4th day of February, 1977, to change the members of that co-partnership known as Horseshoe Creek Limited, a general partnership, for the purpose of owning that certain land described in Exhibit A attached hereto.

"That the full names and addresses of the two partners who are no longer members of or represented by the same name of Horseshoe Creek Limited are:

| "Name | Address |
|---|---|
| "Fred M. Meyer | R. R. # 1 Bennett, Colorado   80102 |
| "Peter T. Scifo | 100 Main Street Parker, Colorado   80134 |

"That the full names and addresses of the parties who henceforth are the partners and who are represented by the same name of Horseshoe Creek Limited, a general partnership, are as follows:

| "Name | Address |
|---|---|
| "Car-Ro, Inc. | R. R. # 1 Bennett, Colorado   80102 |
| "Taras, Inc. | 100 Main Street Parker, Colorado   80134 |

"The said two affiants, to wit: Taras, Inc., a Colorado corporation, and Car-Ro, Inc., a Colorado corporation, are the only corporations, persons or other entities carrying on said business and trade in partnership under the name and style aforesaid.

"IN WITNESS WHEREOF, the parties hereto have affixed their signatures.

"/s/   Fred M. Meyer
"Fred M. Meyer
"/s/   Peter T. Scifo
"Peter T. Scifo
"CAR–RO, INC.
"By /s/   Carolyn J. Meyer
"President

"ATTEST:
"/s/   Rodene G. Meyer sec.
"Secretary

"TARAS, INC.
"By /s/   Peter T. Scifo
"President

"ATTEST:
"/s/   Steve T. Scifo sec.
"Secretary

\* \* \* \* \*"

The certain lands described in the attachment are those in dispute in this case.

On August 4, 1977, Meyer, purporting to be acting as president of Horseshoe, agreed to assign the Centlivre contract to James Jackson as an individual. This assignment was as security for a loan. Then on December 17, 1977, in connection with a construction project in Indiana which Jackson, Inc. had undertaken for Horseshoe among others, Horseshoe pledged the Centlivre contract for deed to Jackson, Inc. as security. Peter T. Scifo signed on behalf of Horseshoe as a general partner. Fred Meyer also signed the agreement as president of Meyer Hog Farms, Inc.—a guarantor under the contract. The signature of James Jackson appears on the document in his capacity as president of Jackson, Inc.

On June 16, 1978, Jackson, Inc., initiated a lawsuit against Horseshoe in the district court in Platte County, Wyoming.[1] The complaint alleged that Horseshoe was still indebted to Jackson, Inc., that the partnership was insolvent, and that it had refused to assign the Centlivre contract for deed pursuant to the December 17, 1977 agreement. The plaintiff prayed for specific performance compelling the assignment of the contract.

On July 7, 1978, Horseshoe moved for a dismissal claiming that the complaint failed to state a claim upon which relief could be granted and that service of process was insufficient. On August 7, 1978, Horseshoe filed a second motion to dismiss in which it contended that the Wyoming court lacked subject-matter jurisdiction. On August 24, 1978, the defendant offered an amended motion to dismiss which contained two additional bases for a dismissal: (1) the court lacked jurisdiction over the person of the defendant, and (2) venue was improper.

A hearing was held on October 17, 1978 on defendant's motions, at which time it was stipulated that Jackson, Inc. was a foreign corporation and that Horseshoe was a Colorado partnership. Horseshoe filed a brief supporting its motions on October 30, 1978; the thrust of its argument being forum non conveniens. On October 31, 1978, Jackson, Inc. filed its brief in opposition to the motions; its contention was that the only issue concerned the district court's subject-matter jurisdiction and in connection therewith it said:

"The only conclusion that can be reached in this matter is that the Court has jurisdiction over the subject matter of the action and that it has jurisdiction over the person of the Defendant.

"The question then arises as to whether or not because the Defendant has argued that this is an action for specific performance of a contract, does this change the general rules as above recited. It would appear that an action for specific per-

formance even though it relates to real property is in personum [sic] in so far as it seeks to compel performance by the Defendant. Where real property is involved such action is in rem only in so far as it seeks action by the Court directly upon or against the property. Of course, this is not true in our case. As against a defendant who is subject to the jurisdiction and control of the Court so that a judgment can be enforced against his person the nature of the action is in personum [sic] and with respect to venue, transitory rather than local. *Otis Oil & Gas Corp. vs. Maier* [74 Wyo. 137], 284 P.2d 653 (1955) (See also 71 Am.Jur.2d, Specific Performance, 180 (1973) [.)]"

Defendant then filed a second memorandum supporting its motion as well as an affidavit of Fred Meyer describing the extent of Horseshoe's relationship with Jackson, Inc. Horseshoe argued in its memorandum:

"An action for specific performance of a contract, even though it relates to real property, is in personam insofar as it is sought to compel performance by the defendant. *Otis Oil and Gas Corp. vs. Maier*, 74 Wyoming 137, 284 P. 2nd 653.

"The general rule is that where a suit for specific performance of a contract involving land seeks only in personam relief against the defendant, the action is transitory in nature and that such transitory action can be maintained in any jurisdiction where service on the defendant could be obtained. An action seeking specific performance of alleged contractural [sic] obligations to pay royalties and initiate exploratory drilling on a mining lease was transitory. *Cobb vs. National Lead Company*, (D.C.Ark.) 215 F.Supp. 48, 63 A.L.R. 2nd 412(7).

"In *Hearst vs. Kuykendall*, 16 Tex. 327, the Court considered the applicability of a statute requiring that actions for the recovery of land be brought in the county

---

1. Though the record in that case was not made a part of the record in this appeal by the parties, numerous references were made to it. Because of that and the interrelationship of these actions, it was proper for the district judge to take judicial notice of the record in that case. *Weber v. Johnston Fuel Liners, Inc.*, Wyo., 540 P.2d 535 (1975).

in which it was situate. In holding that an action for specific performance was not within the statute, the Court stated:

> "'An action for the recovery of lands has a well known and definite signification, and means an action of ejectment, trespass to try title, or a suit to recover the land itself whereas the object of a suit by vendee, for specific performance, is not the recovery of the land itself, but to enforce a contract for its sale, and the delivery of a deed or title to the land * * * to secure title deeds to land is one thing; to recover the land itself is another; and as the formers generally and mainly the object of a suit by vendee for the specific performance of a contract for the sale of land, it is apparent that the action does not come within the scope of a provision, the operation of which is restricted to suits for the recovery of land.'

"and in *Morgan vs. Bell*, 3 Wash. 554, 28 P. 925, the Court held that an action by the vendee against the vendor in a contract for the sale of real property was transitory. The Court stated in part:

> "'The title to this land was not in dispute and could not be affected by the decree of the Court under the pleadings. It is true that the Court could decree a specific performance of the contract under the allegations of the complaint, but it would be a decree affecting the parties to the action personally. It would not determine any question affecting the title, in the sense in which the word "title" is evidently employed in the statute.'"

On November 13, 1978, the Platte County District Court dismissed Jackson, Inc.'s complaint. Jackson, Inc. filed a notice of appeal; however, the appeal was dismissed by stipulation on December 20, 1978.

On December 6, 1978, Jackson, Inc. filed suit against Horseshoe in the United States District Court, Northern District of Indiana, South Bend Division. In its complaint it alleged:

> "2. That the Defendant, Horseshoe Creek Limited, is the purchaser in that certain Contract for Deed dated November 9, 1976, entered into with James F. K. Centlivre, as seller, affecting that certain real property situated in Platte County, Wyoming, as therein described. * * *
>
> "3. That on or about August 4, 1977, the Defendant, Horseshoe Creek Limited by and through Fred M. Meyer made and entered into an agreement with the Plaintiff by the terms and provisions of which agreement the Defendant agreed to assign to the Plaintiff as security for a loan, the Defendant's interest in the Contract for Deed * * *.
>
> "4. That as provided in the seventh numbered provision of the agreement entered into on December 17, 1977, * * * the Defendant Horseshoe Creed [sic] Limited, agreed ... 'to cause the following interests to be assigned to Jackson, its assigns or nominee, as Jackson may in writing direct:
>
>> "'D. A security interest in a certain Contract for Deed entered into on November 9, 1976, between James F. K. Centlivre and Horseshoe Creed [sic] Limited of certain property from James F. K. Centlivre located in Platt [sic] County, Wyoming.'
>
> "5. That despite repeated requests by the Plaintiff, the Defendant, Horseshoe Creek Limited has refused to make and execute an assignment of its interest in said Contract for Deed to the Plaintiff and still fails and refuses to make and execute such an assignment.
>
> "6. That Plaintiff is informed and believes that the Defendant, Horseshoe Creek Limited is without funds or other property from which Plaintiff may be paid the sums due and owing to it and Plaintiff will suffer great damages or irreparable injury if said Defendant fails to assign said Contract for Deed to the Plaintiff and that Plaintiff has no adequate legal remedy."

Simultaneously with initiating the action in Indiana, Jackson, Inc., pursuant to § 1–6–108, W.S.1977, filed in the office of

the Platte County Clerk's Office the following notice:

## "NOTICE OF PENDENCY
## OF ACTION

"NOTICE IS HEREBY GIVEN that James S. Jackson Co., Inc., an Indiana Corporation, has filed an action against Horseshoe Creek Limited, a Colorado General Partnership, and Meyer Hog Farms, Inc., a Colorado Corporation, in the United States District Court of the Northern District of Indiana, South Bend Division, Civil Action # S–78–0271, the object of which action is to compel the Defendant to assign unto the Plaintiff its right, title and interest in and to a Contract for Deed wherein Defendant is purchasing the real property described on Exhibit A hereto annexed and by this reference made a part hereof.

"Dated this 6th day of December, 1978."

The attached Exhibit A described the land involved in the Centlivre contract.

Meanwhile Horseshoe had leased the property covered by the Centlivre contract to James Ludvik, a Colorado resident. Commencing in November of 1978, Ludvik began negotiating with Horseshoe for the acquisition of the Centlivre contract. He testified to the extent of his knowledge concerning the legal actions taken by Jackson, Inc. prior to his purchase as follows:

"Q. So, then, when you got the title policy in January, on or about the 17th, of 1979, then you found out that there was an action pending in the Indiana Court?

"A. That is correct.

"Q. Did you ever know anything about the pendancy [sic] of the action by the filing of the notice of pendancy [sic] of action in connection with the suit here in the Eighth Judicial District? In other words, there have been two notices filed?

"A. You asked me about three different questions. Would you clarify the question?

"Q. Did you know at the time that you were negotiating that Horseshoe Creek had been sued in this Court?

"A. I knew that—I knew that Horseshoe Creek had been sued in this Court.

"Q. And did you know that the relief which was being sought as shown by the notice which was filed was to acquire an assignment of the contract?

"A. I knew that the suit that was litigated in this Court had been dismissed because of lack of judgment.

"Q. But—

"A. Or lack of jurisdiction.

"Q. But the thing was under appeal until December the 20th, and what I am saying is did you know that? You knew that there was a suit pending?

"A. And I knew that the appeal was dismissed.

"Q. After it was dismissed on the 20th of December. I am talking about in November. That's when you said you started negotiations.

"Q. [A] I didn't know all of the involvement of the title until January 17th when I received this. I knew that an action had been filed, and I knew that it was against Horseshoe Creek, which we call 1 for clarification, which is the general partnership of two individuals. However, I could see no correlation with the company that I was dealing with, which was Horseshoe Creek, the partnership of two corporations.

\* \* \* \* \* \*

"Q. Now, you say that the Indiana suit, which you knew about, was a suit against Horseshoe Creek Limited which was a partnership composed of Fred Meyer and Peter Scifo; is that correct?

"A. That's correct.

"Q. And that made a difference to you rather than a partnership composed of two corporations, Taras, Inc., and Car-ro, Inc.?

"A. Most definitely.

"Q. Why did it?

"A. They are two different entities.

"Q. What difference does it make if they are two different entities?

"A. Am I not a separate entity than Horseshoe Creek, the partnership of two corporations, but my rights are under the same assignment.

"Q. The partnership agreements which are entered into here and which are amended as entered into here, and the affidavits affixed to them show there was only one partnership. It says Horseshoe Creek Limited, a general partnership. Two men withdrew and two corporations replaced them in the same partnership. Now, what I am asking you is what difference did it make to you who was composing the partnership at the time of the Indiana case?

"A. It made a definite difference.

"Q. You were interested only in the contract, though, weren't you?

"A. I was interested in the pendancy, [sic] and if the pendancy [sic] was filed against the corporation of two individuals or the partnership of two corporations, and it was the pendancy [sic] was filed against the partnership of two individuals. I was dealing with the partnership of—composed of two corporations. That made a lot of difference. It is very imperative to make that distinction.

"Q. Didn't Horseshoe Creek Limited own the contract?

"A. Horseshoe Creek, a partnership [sic] of two corporations owned the contract for deed when I purchased.

\* \* \* \* \* \*

"Q. Now, when you obtained the January 17th title insurance commitment, which is Joint Exhibit 8, the first part of that, you testified before the noon recess when Mr. Wagner was examing [sic] you that you read this before you entered into the agreement to purchase the assignment of contract?

"A. What date, sir?

"Q. January the 17th?

"A. Yes.

"Q. I call your attention—now you have got it, I think, the January the 17th one?

"A. Yes.

"Q. I call your attention to paragraph 11 on about the fifth page. Paragraph 11 says, and I quote:

" 'This policy does not insure against loss or damages resulting from a Judg-

ment that might be entered in the Suit pending Civil Action # S–78–0271 as set out in Notice of Pendency of Action, recorded December 6, 1978, in Book 218, page 509, Records of Platte County, Wyoming, against Horseshoe Creek Limited, a Colorado General Partnership, et al.'

"You read that, and you knew that that provision was in there, did you not?

"A. Yes.

\* \* \* \* \* \*

"Q. So you knew there was an action going on, and you knew that the object of the action was to compel the assignment of the same contract which you obtained an assignment of; is that right?

"A. That is correct.

"Q. And you knew that prior to the time that you made your purchase of the assignment from Horseshoe Creek Limited?

"A. Yes. \* \* \* "

On January 23, 1979, an assignment of the Centlivre contract was formally executed by Horseshoe and Ludvik became the partnership's assignee.

A compromise and settlement agreement was entered into and filed in the Indiana federal court on August 29, 1979. The agreement provided:

"A. Defendants, Horseshoe Creek Limited and Fred M. Meyer, agree to pay Plaintiff the sum of One Hundred Seventy-five Thousand Dollars ($175,000.00) on or before December 15, 1979.

\* \* \* \* \* \*

"C. Plaintiff, upon payment of the aforementioned One Hundred Seventy-five Thousand Dollars ($175,000.00) agrees that all claims, demands, rights and causes of action that it has or may have against the Defendants as set forth in its lawsuit will be satisfied, discharged and settled and it will dismiss its lawsuit with prejudice against the Defendants.

"D. If the Defendants fail to pay to Plaintiffs the aforementioned One Hundred Seventy-five Thousand Dollars ($175,000.00) when due, the Defendants agree and consent to this Court entering

a judgement against them, jointly and severally, in the amount of Three Hundred Fifty-two Thousand Ten Dollars and Fifty-four Cents ($352,010.54) with interest at ten percent (10%) per annum from March 30, 1979, to date of judgement, all without relief from valuation or appraisment [sic] laws and with attroney [sic] fees in the amount of Fifteen Thousand Dollars ($15,000.00), together with a decree requiring Horseshoe Creek Limited to assign to Plaintiff a security interest in that certain deed dated November 9, 1976, between James F. K. Centlivre and Horseshoe Creek Limited, of real property located in Platte County, Wyoming, as security for the money judgement entered by the Court. A copy of this agreement shall be filed with the Court and the parties are agreed that it shall form the basis of a judgement to be entered in this action in the event the Defendants fail to pay Plaintiff as agreed upon."

By order of the United States District Court, Northern District of Indiana, South Bend Division, the settlement agreement was approved.

Upon the failure of Horseshoe to pay Jackson, Inc. the sum of $175,000.00, Jackson, Inc. moved the U.S. District Court for an entry of judgment ordering Horseshoe to assign the Centlivre contract for deed in accordance with the settlement agreement. On December 17, 1979, the federal court granted Jackson, Inc.'s motion and ordered Horseshoe to execute the assignment within ten days.

On January 2, 1980, after being informed of Horseshoe's failure to comply with the court's order, the federal court ordered the United States Marshall of the Northern District of Indiana to execute, acknowledge and deliver to Jackson, Inc. an assignment of Horseshoe's interest in the Centlivre contract.[2] Pursuant thereto, the following was executed on January 4, 1980:

## "ASSIGNMENT FOR CONTRACT OF DEED

"The undersigned United States Marshall of the United States District Court for the Northern District of Indiana, pursuant to the Order of Allen Sharp, Judge, United States District Court, does hereby assign, transfer, set over and quit claim to James S. Jackson Co., Inc. an Indiana corporation, Assignee, the Contract for Deed of Horseshoe Creek Limited with James F. K. Centlivre dated November 9, 1976, a copy of said Contract for Deed attached hereto and made a part thereof, which Contract for Deed was for the purchase by Horseshoe Creek Limited from James F. K. Centlivre of the following real estate located in Platte County, Wyoming, to-wit:

[description of the land in question]

"including all rights due or to become due under the Contract for Deed, with power to enforce in its own name or in the name of Horseshoe Creek Limited any and all

**2.** This action was taken pursuant to Rule 70, F.R.C.P.:

"*If a judgment directs a party to execute* a conveyance of land or to deliver deeds *or other documents or to perform any other specific act* and the party fails to comply within the time specified, *the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party.* On application of the party entitled to performance, the clerk shall issue a writ of attachment or sequestration against the property of the disobedient party to compel obedience to the judgment. The court may also in proper cases adjudge the party in contempt. If real or personal property is within the district, the court in lieu of directing a con-

veyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law. When any order or judgment is for the delivery of possession, the party in whose favor it is entered is entitled to a writ of execution or assistance upon application to the clerk." This rule is practically identical to Rule 70, W.R.C.P. The only differences are that "or sequestration" does not appear in the Wyoming rule and "state," appears in lieu of "district" in the next to last sentence. The purpose of the rule is to give the court ample power to deal with parties who seek to thwart judgments by refusals to comply with orders to perform specific acts. Wright & Miller, Federal Practice and Procedure: Civil § 3021.

rights given to Horseshoe Creek Limited thereunder or which may be deemed necessary by Assignee to enforce the terms thereof.

"This Assignment is to secure a judgment entered against Horseshoe Creek Limited in the United States District Court, Northern District of Indiana, South Bend Division, Cause No. S–78–0271 on December 17, 1979, in the amount of Three Hundred Ninety Two Thousand Two Hundred Seventy Seven and 82/100 Dollars ($392,277.82), and Assignee has a security interest in the real estate described herein until said judgment has been fully paid and satisfied.

"This Assignment shall in no way be deemed the exclusive remedy of Assignee to collect the above judgment, but shall be deemed an additional remedy along with any other remedy available at law or equity."

Meanwhile on October 12, 1979, this action had been initiated by Ludvik. In his complaint against Jackson, Inc., he listed three causes of action. First, he contended that the notice of pendency of action affected title to the property he claimed under the Centlivre contract and that the title should be quieted in him. In his second and third causes of action he alleged that:

"The Plaintiff, in recording the Notice of Pendency of Action, acted maliciously and the filing was to harass the Plaintiff and his predecessor in title, Horseshoe Creek Limited and for the further purpose of applying unlawful and unjustified pressure for the payment of additional sums of money which are not owed by Plaintiff."

"By reason of these facts Plaintiff has been damaged in the sum of $30,000.00 and will suffer damages in the future, the exact amount of which cannot now be ascertained."

"The Defendant acted maliciously and for the purpose of extorting additional sums of money from Plaintiff and Horseshoe Creek Limited and by reason thereof Plaintiff should be awarded punitive damages in the amount of $10,000.00."

Wherefore Ludvik prayed for a judgment providing:

"1. That title be quieted in the Plaintiff and against the Defendant and that the Notice of Pendency of Action be set aside, declared invalid and void.

"2. For Judgment in the sum of $30,-000.00 actual damages and $10,000.00 in punitive damages.

"3. For attorney fees and costs of this action."

On January 4, 1980, Jackson, Inc. filed a counterclaim against Ludvik. In it the allegation was made that Ludvik had knowledge of Jackson, Inc.'s claim against Horseshoe prior to the time he was assigned the contract. The counterclaim also referred to the assignment of the Centlivre contract to it made by the U.S. Marshall. It concluded by asking the district court to declare Jackson, Inc.'s interest in the land to be superior to Ludvik's interest. Damages were also sought.

The case proceeded to trial before the court on July 22, 1980. The trial judge gave his findings in a decision letter along with his reasoning:

"1. The Court finds generally in favor of the Defendant and against the Plaintiff on Plaintiff's Complaint.

"2. The Court finds that as to Plaintiff's Complaint, the Plaintiff is not the owner of the real property described in his Complaint and that title to said real estate should not be quieted in the Plaintiff and that the notice of pendency of action should not be set aside.

"3. The Court finds that the Plaintiff is not entitled to a judgment for either actual damages or punitive damages.

"4. The Court finds generally in favor of the Defendant on its Counterclaim and against the Plaintiff.

"5. The Court finds that the assignment of contract for deed given to the Defendant pursuant to the judgment in the United States District Court, Northern District of Indiana, South Bend Division, should be and the same is hereby declared superior to any interest which the Plaintiff has in the subject property, and that

the Defendant shall be entitled to immediate possession of the real property covered in the assignment of the contract for deed given to the Defendant pursuant to said judgment.

\* \* \* \* \* \*

"In reaching this decision, the Court considered that it had dismissed Civil Action No. 14–55 brought by James S. Jackson Company, Inc., as Plaintiff, v. Horseshoe Creek Limited, as Defendant, because it found that the action should be brought in Indiana or Colorado, because even though it related to a contract for the purchase of real property, that it was an action in personum [sic]; and the Court now finds that the action brought by the Defendant in Indiana was properly brought there in the United States District Court, Northern District of Indiana, South Bend Division. Plaintiff contended throughout the trial that Horseshoe Creek Limited, the partnership that acquired the real estate from James F. K. Centlivre and was one of the Defendants in the suit in the United States District Court in Indiana, was a different partnership than the partnership that assigned the Centlivre contract to the Plaintiff. The Court finds that although the original partners, Fred M. Meyer and Peter T. Scifo, formed family corporations and the family corporations, by agreement, became the partners instead of the two individuals, that it was still the same partnership. Fred M. Meyer was the agent for service for Horseshoe Creek Limited, a partnership, and was the party served in the United States District Court action in Indiana, was the individual that did all the negotiating for the partnership, and was in possession of the real estate in question under the Centlivre contract until the partnership purported to assign the contract to Plaintiff, and then remained in possession of the realty under the direction of the Plaintiff.

"In arriving at the above decision, the Court also finds that the Plaintiff accepted the assignment of the contract knowing of the pending suit in the United States District Court in Indiana and so testified; and, therefore, took possession subject to the rights of the parties to the litigation as was finally determined by the judgment of that court, and as to the Defendant herein, cannot be considered a bona fide purchaser."

On August 20, 1980, Jackson, Inc. moved for a new trial on the basis of newly discovered evidence. This new evidence consisted of a set of agreements entered into on April 22, 1980, by Ludvik and Centlivre. Under the terms of the agreements, if there was a default on May 1, 1980, on the Centlivre contract for deed and it was not corrected within ninety days, then Centlivre would execute his right under the contract to terminate it for non-performance and take the deed and place it in a trust of which Ludvik and Centlivre would be trustees. Meanwhile, Ludvik would place in the trust $39,-144.77—the payment due on May 1, 1980 under the Centlivre contract for deed was $40,893.17. This money was to be used by Centlivre to pay a debt of his. The purpose of the trust would be to sell the Centlivre land with Ludvik receiving 65% of the proceeds. The arrangements were clearly a thinly disguised attempt to cut off Jackson, Inc.'s interest in the land.

Jackson, Inc.'s motion for a new trial was denied; and on November 5, 1980, final judgment was entered. Both parties appealed.

Ludvik, on appeal, has claimed that the district court erroneously concluded that Jackson, Inc.'s interest in the land was superior to his. His argument rests largely upon the conclusion that the court-ordered assignment of the Centlivre contract executed by the U.S. Marshall on behalf of Horseshoe exceeded the power of the court there and thus was invalid. In his conclusion, Ludvik asks that this court:

" \* \* \* reverse this matter and find that Plaintiff's interest is superior to that of Defendant's on the basis that the U.S. District Court for the Northern District of Indiana, Southbend Division did not have jurisdiction over lands situated exclusively in Platte County, Wyoming.

Plaintiff asks that title be quieted in him to the exclusion of Defendant."

### ANALYSIS

I do not believe that Ludvik's request for a quiet title should have been granted; and therefore, I must dissent from the majority's opinion. The law is well settled that if there is any basis upon which a district court may be affirmed, this court must do so. I frankly believe in this case there may be a couple theories supporting the trial court's decision, but I only outline one.

Both parties claim the land through Horseshoe; Jackson, Inc.'s interest arose through a contract which provided it with the right to the Centlivre contract if there was a default by Horseshoe, and Ludvik claimed an out-and-out assignment. It has been held that where two parties, each seeking quiet title against the other, claim an interest to the property through a common source, the question presented is only, as between the parties, whose interest is superior. *Dame v. Mileski*, 80 Wyo. 156, 340 P.2d 205 (1959). Thus the issue presented by this case should actually be, as between Jackson, Inc. and Ludvik, whose interest is superior. The facts clearly show that Jackson, Inc. acquired his rights to the Centlivre contract prior to Ludvik's acquisition.

Section 34-1-120, W.S.1977, provides:

"Every conveyance of real estate within this state, hereafter made, which shall not be recorded as required by law, shall be void, as against any subsequent purchaser or purchasers in good faith and for a valuable consideration of the same real estate or any portion thereof, whose conveyance shall be first duly recorded."

Section 34-1-102, W.S.1977, defines the term "conveyance":

"The term 'conveyance,' as used in this act, shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, alienated, mortgaged or assigned, or by which the title to any real estate may be affected in law or in equity, except wills, leases for a term not exceeding three (3) years, executory contracts for the sale or purchase of lands, and certificates which show that the purchaser has paid the consideration and is entitled to a deed for the lands, and contain a promise or agreement to furnish said deed at some future time."

Under such a definition, Jackson, Inc.'s claim was not a conveyance, in that it was a contract to assign an executory contract. Accordingly, the statutes do not apply. In considering what law to apply in this case, the majority would have been wise to review *State, ex rel. State Highway Commission v. Meeker*, 75 Wyo. 210, 294 P.2d 603, 605 (1956). The court there discussed what happens when a transaction has occurred which affects title to land but which does not constitute a conveyance under the statute such that recording is not required:

"* * * At common law in England, there was no system of registration or recording, and the rule between claimants of the same title was found in the maxim 'prior in tempore potior est in jure,' which means, he who is first in time has the better right. 45 Am.Jur. 435; 23 R.C.L. 170; 2 Merrill on Notice § 921. That is still the law except as abrogated by statute. Thus it is said in 2 Merrill on Notice § 921 as follows:

"'So thoroughly has the recording office entered into our legal system that lawyers and judges alike tend to refer to notice by record as though it were a common law principle without reference to the statutes upon which it rests. Yet because the foundation is statutory, and because difference in phraseology may involve variance in interpretation and application, we need to remember constantly that the necessity for recordation, as well as its effect, is a creature of ordinance, and that without the command of our omnisapient representatives in legislature assembled no one is required to place his title upon record in order to preserve it. In a number of instances statutes which merely authorize or permit the recording of particular instruments have been construed not to make such recording

essential to the protection of property interests arising thereunder.'

"Numerous cases are cited. So it is said in 45 Am.Jur. § 155, p. 515:

" 'The failure to record an instrument which is not required to be recorded does not affect or vitiate the instrument as to anyone, and it is valid not only between the parties thereto, but also to subsequent purchasers and encumbrancers.'

"That rule is applicable in the case at bar. * * * "

Also of interest is the case of *Low v. Sanger*, Wyo., 478 P.2d 60 (1970). There this court noted that recordation of executory contracts for the purchase of land was not necessary under the Wyoming statutes. It further observed:

" * * * failure to record such an instrument does not vitiate it as to subsequent purchasers—interests thus engendered being determined according to general principles of law and equity, which give weight to numerous common law maxims, including the one defendants seek to emphasize, 'he who is first in time has the better right.' * * * " 478 P.2d at 63.

It is obvious from the foregoing that where the recording act does not apply, the law is that the first in time should prevail unless equity dictates otherwise. See also *Torgeson v. Connelly*, Wyo., 348 P.2d 63, 72 (1959). Here Jackson, Inc. acquired a right to the Centlivre contract if Horseshoe defaulted on a separate construction contract. That right under the common law cannot be defeated by Horseshoe subsequently selling his rights under the Centlivre contract to someone else unless equity dictates to the contrary. And here that is not the case.

One of the most important principles of equity is that he who comes into equity

must come with clean hands. *Takahashi v. Pepper Tank & Contracting Co.*, 58 Wyo. 330, 131 P.2d 339 (1942). Here, the district court found, as Ludvik admitted, that he knew of the interest claimed by Jackson, Inc., and the fact that a lawsuit was being pursued to enforce that right. Later it is apparent from the record that he attempted to circumvent the legal system by an elaborate arrangement which attempted to cut off Jackson, Inc.'s rights while leaving his intact. Clearly Ludvik's hands were not clean. By no stretch of the imagination can he be considered a bona fide purchaser of the contract for deed.

On the other hand, I note that when Jackson, Inc. decided to proceed against Horseshoe based upon the latter's default, it brought suit in Wyoming, in the same county in which the land was located. When the district court ruled that it could not hear the case because it was transitory and Jackson, Inc. was forced to proceed elsewhere, it filed a notice of the action in order to warn others of the danger of accepting an assignment from Horseshoe of the Centlivre contract. Jackson has become the victim of "damned if you do, and damned if you don't" at the hands of the judicial system.

The majority contends that the notice was improperly filed—that § 1–6–108, W.S. 1977[3] granted Jackson, Inc. no right to file it. But the plain language of the statute authorizes such a filing when an action is initiated "in a United States district court." Such plain statutory language leaves no room for resort to rules of construction, even though the proper rule of construction is contrary to that cited by the majority, in that § 1–6–108, W.S.1977 is part of the Code of Civil Procedure and § 1–1–101 provides:

---

**3.** Section 1–6–108, W.S.1977:

"*In an action* in a state court or *in a United States district court* affecting the title or right of possession of real property, or in an action between husband and wife, the plaintiff at the time of filing the complaint and the defendant at the time of filing his pleading when affirmative relief is claimed or at any time afterward, may file in the office of the county clerk in which the property is situate a notice of pendency of the action containing the names of the parties, the object of the action or defense and a description of the property in that county affected thereby. From the time of filing the notice a subsequent purchaser or encumbrancer of the property shall have constructive notice of the pendency of the action." (Emphasis added.)

"The Code of Civil Procedure and all proceedings under it shall be liberally construed to promote its object and assist the parties in obtaining justice. The rule of common law that statutes in derogation thereof must be strictly construed has no application to the Code of Civil Procedure, but this shall not be so construed as to require a liberal construction of provisions affecting personal liberty, relating to amercement or of a penal nature."

Further, it does not matter since Ludvik admits having notice of Jackson, Inc.'s claim. It does not matter how he got the notice; all that counts is he knew. The question in this case only needs to concern, as between Jackson, Inc. and Ludvik, whose rights are superior. As was said in a previous case before this court:

"We have often said that a plaintiff in a suit to quiet title must recover on the strength of his own title and not on the weakness of his adversary, but as pointed out in *York v. James*, 62 Wyo. 184, 165 P.2d 109, 162 A.L.R. 730, this rule is inapplicable where the parties trace their respective titles to a common source, in which situation the plaintiff need not show his title good as against the whole world but only against the defendant, and the one who has the superior title or equity must prevail." *Torgeson v. Connelly*, supra, 348 P.2d at 73.

Another court with good in personam jurisdiction has held that Horseshoe defaulted on its contract with Jackson, Inc. and that Horseshoe is obligated to execute an assignment. Whether or not we recognize that court's jurisdiction to execute the assignment in the name of Horseshoe, we must recognize that as between these two parties the law and equity dictates that Jackson, Inc.'s interest is superior to Ludvik's.

I am convinced that Jackson, Inc. has superior title in law and equity; and, therefore, I cannot join in the majority's disposition of this case.[4] I would have affirmed the district court.

4. If Ludvik had known nothing of Jackson, Inc.'s claim in this case, and Jackson, Inc. had done nothing to alert prospective innocent pur-

## ORDER DENYING PETITION FOR REHEARING

This case came on before the Court upon the Petition for Rehearing filed herein by James S. Jackson Company, Inc., appellee in Case No. 5426 and appellant in Case No. 5427, together with the Petitioner's Brief in Support of Petition for Rehearing, and the Court having considered carefully the matters presented in those documents finds that the Petition for Rehearing should be denied, and it therefore is

ORDERED that the Petition for Rehearing filed herein by James S. Jackson Company, Inc., be, and the same hereby is, denied.

RAPER, Justice, dissenting, with whom TAYLOR, District Judge, joins.

I would grant the petition for rehearing in this instance because "there is a reasonable probability that the court may have arrived at an erroneous conclusion or overlooked some important question or matter necessary to a correct decision." *Elmer v. State*, Wyo., 466 P.2d 375, 376 (1970). From the time of oral arguments until the publication of the majority and dissenting opinions, this case has been a thorn in the side of this court. It has been an extraordinarily difficult case. In the end, the case turned upon the majority's interpretation of the Compromise and Settlement Agreement entered into during the Indiana litigation. The parties had neither briefed nor discussed this issue in advance. This court presumed to decide an issue without any guidance or assistance from the parties. Now the losing party has come forward with case authority that indicates that the majority acted in haste, but the majority refuses to consider the possibility that it may have been wrong. I believe that the majority should reconsider and let the parties address the issue more fully.

Personally, I would have affirmed without having reached the agreement issue as I

chasers, an entirely different case would have been presented.

noted in my dissent. I expressed my belief that there existed several bases for affirmance. And, I think that petition admirably covers those grounds. But is is not sympathies with petitioner's position that leads me to vote in favor of a rehearing, but it is my belief that this court must carefully and cautiously decide issues before it. And when on occasion we prove our fallibility in deciding an issue without the assistance of the parties and as a result fail to find and consider opposing authorities, we should be willing to at least consider the possibility of error and reconsider our decision. It is on that basis that I favor a rehearing in this case.